John P. Flynn (# 015065)
Todd A. Williams (# 020066)
DIOGUARDI FLYNN LLP
7001 N. Scottsdale Road, Suite 2060
Scottsdale, AZ 85253
Telephone: (480) 951-8800
Facsimile: (480) 951-8824
jflynn@dioguardiflynn.com
twilliams@dioguardiflynn.com

*Attorneys for International Media, Inc., incorrectly named herein as International Media, Ltd.*

# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| Cybernet Entertainment LLC, A New York Company,<br><br>Plaintiff,<br><br>v.<br><br>IG Media Inc. and International Media Ltd. dba YouJizz.com JizzHut.com and JizzOnline.com and OnlyJizz.com and MoviesGuy.com and JizzBo.com and HotFunHouse.com and Igor Gens and DOES 1-10 inclusive and DOES COMPANIES 1-100 inclusive<br><br>Defendants, | Case No. 2:12-cv-01101-SRB<br><br>**INTERNATIONAL MEDIA, INC.'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

In a rambling, 154-page, 544-paragraph Complaint, Plaintiff Cybernet Entertainment, LLC ("Cybernet") manages to tell stories about how difficult it is to produce quality pornography, how even mainstream actors find it challenging, and how much Cybernet's neighbors in San Francisco really like having them around. What Cybernet does *not* manage to do in 154 pages, however, is articulate a legitimate and legally cognizable basis which would support this Court's exercise of personal

jurisdiction over International Media, Inc. ("International Media")[1] or any of the unserved Defendants in this case.[2]

The present action is brought by Cybernet, a New York Company with a principal place of business in California, against International Media, a Bahamian Company; IG Media, Inc. ("IG"), a Canadian Company; and Igor Gens ("Mr. Gens"), a citizen of Canada and Poland. *None* of the alleged wrongful acts at issue are alleged to have taken place in Arizona. Further, Cybernet does not claim that any act was aimed at Arizona or that the harm was inflicted there.

If the Court is, at this point, confused as to why the present action was filed in Arizona, it is not alone. This action has but two passing connections to this forum (neither of which has any bearing on whether jurisdiction is proper here): (1) some of the domain names at issue in the case were registered through an Arizona based registrar, and (2) Cybernet's attorney is located here, presumably making the litigation more convenient for ***him***.

As explained below, the Complaint should be dismissed as to International Media pursuant to Fed. R. Civ. P. 12(b)(2) due to the abject absence of personal jurisdiction.

## FACTS

The simple reality of this matter is that International Media has almost no contacts with the State of Arizona, and insignificant contacts with the United States as a whole. International Media is a Bahamian Corporation with a business address of 303 Shirley Street, P.O. Box N-492 in Nassau Bahamas. *See* Declaration of Igor Gens, International Media's President, attached hereto as Exhibit 1, at ¶ 4. International Media is not registered or licensed to do business in Arizona, or in any state in the United States. *Id*. at ¶ 5. International Media does not pay taxes in Arizona, or in any state in the United States. *Id*.

---

[1] Cybernet incorrectly named International Media as "International Media, Ltd."
[2] The present Motion is brought only by International Media because it is the only Defendant served in this case to date. Indisputably, the analysis supporting this Court's decision to grant this Motion would apply with equal force to the other named (and unserved) Defendants.

Similarly, International Media does not maintain bank accounts or offices in Arizona or the United States, nor does it have any employees in Arizona or the United States.  *Id*. at ¶ 6, 7.  International Media does not own any real estate or property in either Arizona or the United States.  *Id*. at ¶ 7.  International Media does not target print, television, or radio advertising in or towards Arizona or in or towards any state in the United States.  *Id*. at ¶ 8.

Indeed, International Media's sole contacts with Arizona consist of two minor connections.  First, International Media owns certain Internet domain names that are registered with an Arizona-based domain registrar – Domains By Proxy.  *Id*. at ¶ 11.  A domain registrar is a company that manages the registration of Internet domain names.  *Id*.  Second, the Internet domains owned by International Media are accessible from anywhere in the world with a connection to the Internet, including by individuals in Arizona.  *Id*. at ¶ 12.  International Media has no other connections with the State of Arizona.

Moreover, International Media also has very few additional contacts with the United States as a whole.  International Media has appointed an agent, located in Florida, for the very limited purpose of receiving and forwarding Digital Millenium Copyright Act ("DMCA") takedown notices.  *Id*. at ¶ 13.  The DMCA agent performs no other services for International Media other than accepting and forwarding DMCA notices.  *Id*.  Finally, International Media also has an agreement with an advertising broker who is located in the United States, and two direct customer relationships with customers in the United States.  *Id*.

The websites operated by International Media are free of charge to anyone accessing the Internet over the age of 18.  *Id*. at ¶ 14.  Visitors to the sites, including visitors from Arizona and from the United States in general (just like visitors from everywhere else in the world), are not charged a fee to access the sites and do not enter into any form of contractual agreement with International Media.  *Id*.  Individuals that upload videos or content to the websites owned by International Media, including

1  individuals from Arizona and from the United States in general, are not compensated by
2  International Media and do not enter into any form of contractual agreement with
3  International Media. *Id*. at ¶ 15.

4  International Media generates revenue solely through the sale of advertising space
5  on its various websites. *Id*. at ¶ 16. International Media primarily utilizes the services of
6  an Internet advertising broker to sell space on its websites. *Id*. Advertisers that pay to
7  advertise on International Media's websites pay the fees for their advertising to the
8  broker, and the broker remits a single monthly check to International Media that
9  combines all advertising revenue regardless of its source. *Id*. In the two instances in
10 which International Media deals directly with an advertising customer, none of those
11 advertisers are in Arizona. *Id*.

12 The "YouJizz Premium" website referenced in Exhibit 6 to the Complaint is
13 neither owned nor operated by International Media. *Id*. at ¶ 17. Indeed, the premium site
14 is no longer operational and has not been operational for some time. *Id*. When the
15 premium site was operational, it was what is known as a "white label" site, which is
16 owned and operated by a third party. *Id*. International Media did not own or control the
17 white label site. *Id*. Instead, International Media had an agreement with a third-party
18 content provider (which was located outside of the United States) that hosted and ran the
19 "premium membership" site. *Id*. The third-party provider not only ran the premium site
20 and provided all of the content, it also exclusively handled all billing for the site and
21 received all revenue. *Id*.

22 //
23 //
24 //
25 //
26 //
27 //
28

# ARGUMENT

### A.     Standard

The plaintiff bears the burden of establishing personal jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). A defendant may move prior to trial to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff is 'obligated to come forward with facts, by affidavit or otherwise, supporting personal jurisdiction.'" *Scott v. Breeland*, 792 F.2d 925, 927 (9th Cir. 1986).

"Where, as here, there is no applicable federal statute governing personal jurisdiction, the law of the state in which the district court sits applies." *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482, 1484 (9th Cir. 1993). In the present case, it is unclear what basis Cybernet believes exists for this Court to exercise personal jurisdiction over International Media or any of the Defendants for that matter. As the jurisdictional basis for filing in this Court, Cybernet alternatively cites 28 U.S.C. §§ 1391(b), (c), and (d); 28 U.S.C., § 1400; and the Defendants' alleged "business activities in and directed to this district" and "tortious acts within this district or aimed at this district." *See* Complaint, ¶¶ 9-10, 13.

Cybernet's assertion that personal jurisdiction can be based on any portion of 28 U.S.C. §1391 may be easily discarded since Section 1391 deals with venue, not jurisdiction.

Cybernet's citation to 28 U.S.C. §1400, which deals with jurisdiction in copyright actions, provides that:

> Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found.

Although this section might be of interest or utility if the Defendants or their agents resided in Arizona, they do not (s*ee* Declaration of Igor Gens, attached hereto as Exhibit 1). The Complaint does not allege anything to the contrary.

Presumably, Cybernet's real claim of personal jurisdiction arises – if at all – under Arizona's long arm statute or under Fed. R. Civ. P. 4(k).  Because there is no federal statute providing for personal jurisdiction in this matter, Cybernet has the burden of establishing personal jurisdiction by demonstrating that jurisdiction is: (1) permitted under Arizona's long-arm statute, and (2) that the exercise of jurisdiction does not violate federal due process. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995).   Since Arizona's long-arm statute reaches to the full limits of due process, the Court need only decide whether the exercise of personal jurisdiction will comport with the constitutional requirements of due process. *See, e.g., Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998).  In making its determination, the Court must analyze whether personal jurisdiction exists over each defendant separately. *See Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003).

A similar analysis occurs with respect to federal long arm jurisdiction under Fed. R. Civ. P. 4(k)(2).  Under Rule 4(k)(2):

> [A] court may exercise jurisdiction when three requirements are met.  First, the claim against the defendant must arise under federal law.  Second, the defendant must not be subject to the personal jurisdiction of any state court of general jurisdiction.  Third, the federal court's exercise of personal jurisdiction must comport with due process.

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 461 (9th Cir. 2007) (internal citations omitted).  "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462.  Under either analytical framework, Plaintiff's Complaint is defective and properly dismissed since this Court cannot exercise personal jurisdiction over International Media.

### B. The Court Cannot Exercise Personal Jurisdiction Over International Media Under Arizona's Long Arm Statute.

"Due process requirements are satisfied when in personam jurisdiction is asserted over a nonresident corporate defendant that has 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984) *quoting Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). "When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction.'" *Id., quoting Shaffer v. Heitner, 433 U.S. 186 (1977)*.

As the Court is aware, there are two types of personal jurisdiction: general and specific. "General jurisdiction exists when a defendant is domiciled in the forum state or his activities there are 'substantial' or 'continuous and systematic.'" *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998) "'Specific' jurisdiction contrasts with 'general' jurisdiction, pursuant to which 'a state exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'" *Burger King, Corp. v. Rudzewicz*, 471 U.S. 462, n. 15 (1985) *quoting Helicopteros Nacionales* at n.9. In this case, the Court has neither general nor specific jurisdiction over International Media.

"For general jurisdiction to exist over a nonresident defendant such as [International Media], the defendant must engage in 'continuous and systematic general business contacts' . . . that 'approximate physical presence' in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). "This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Id*. Plaintiff's Complaint is devoid of the type of allegations that could even begin to satisfy the "exacting" standards for general personal jurisdiction over International Media.

Alternatively, specific jurisdiction may be exercised over a defendant in certain circumstances. The Ninth Circuit applies a three-part test to determine whether the court may exercise specific jurisdiction over a non-resident defendant:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 802 (9th Cir. 2004).

If Cybernet does not satisfy either of the first two prongs, personal jurisdiction is not found and the inquiry ends. *Id.* However, if Cybernet meets both prongs, the burden shifts to International Media to show that the exercise of jurisdiction would be unreasonable. *Id.* Finally, "a higher jurisdictional barrier" exists where the defendants are aliens as opposed to simply citizens from different states "because important sovereignty concerns exist." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1199 (9th Cir. 1988) (*citations omitted*). In the present case, Cybernet has not alleged – and cannot allege – facts sufficient to subject International Media to either general or specific personal jurisdiction in Arizona.

### 1. General Jurisdiction

There can be no legitimate argument that International Media is subject to general personal jurisdiction in Arizona. "To establish general personal jurisdiction, the plaintiff must demonstrate the defendant has sufficient contacts to 'constitute the kind of continuous and systematic general business contacts that 'approximate physical presence.'" *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1124 (9th Cir. 2002). "[A] defendant whose contacts are substantial, continuous, and systematic is subject to a court's general jurisdiction even if the suit concerns matters not arising out of his contacts with the forum." *Glencore Grain*, 284 F.3d at

1123 (*citing Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415 n. 9, 104 S.Ct. 1868, 80 L. Ed. 2d 404).

The Complaint makes no allegations whatsoever that International Media had *any* contacts with Arizona, much less "substantial, continuous, or systemic" ones which might "approximate physical presence." International Media does not maintain any servers within Arizona, has no employees in Arizona, does not advertise in Arizona, owns no real estate in Arizona, pays no taxes in Arizona, and has no bank accounts in Arizona. *See* Declaration of Igor Gens, attached hereto as Exhibit 1*,* at *¶¶* 5-7. International Media is not registered to do business in Arizona; has no agents for service of process in Arizona; conducts no business in Arizona; makes no sales in Arizona (or anywhere else as International Media does not charge visitors to its site or enter into financial transactions with them). *Id*. at ¶¶ 5, 8-9, 14-16.

Instead, the only direct connection that Cybernet alleges as between the defendants and Arizona is that certain websites owned by International Media were registered through Domains By Proxy, a domain registrar located in Arizona. This allegation is insufficient to establish general jurisdiction.[3] The Ninth Circuit has

---

[3] The Complaint also implies that this Court should exercise general jurisdiction over International Media by virtue of the fact that (1) International Media has domains which are registered through Domains by Proxy and (2) Domains by Proxy's registration agreement contains a forum selection clause which provides that actions "relating to or arising out of this Agreement" must be brought in Arizona. Assuming, for the purposes of this motion only, that International Media knowingly agreed to the terms of the forum selection clause, this limited clause could hardly translate into general jurisdiction for all matters and as to all persons or entities, ***including entities such as Plaintiff that were not parties to the Agreement***. If this were so, then *every* person or entity to register a domain name through a registrar would be subject to general jurisdiction for all purposes in the state in which the registrar was located. For example, GoDaddy (the world's largest registrar, which is also located in Arizona and whose owner, Bob Parsons, also owns Domains by Proxy) claims to have registered over 53 million domains. If Cybernet's logic is to be accepted, the owners and/or operators of each of those 53 million domains is subject to general jurisdiction in Arizona by anyone and arising out of any conceivable cause of action, regardless of whether the parties have any other connection to Arizona. Clearly, this cannot be the law.

previously held that "an out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident." *HK China Group, Inc. v. Beijing United Auto. & Motorcycle Mfg. Corp.,* 417 Fed. Appx. 664, 666 (9th Cir. 2011), *citing Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot.")

Other courts addressing the question more directly have held that merely registering a domain name with an in-state registrar is insufficient to give rise to personal jurisdiction. *Graduate Mgmt. Admission Council v. RVR Narasimha Raju,* 241 F. Supp. 2d 589, 595 (E.D. Va. 2003) ("First, mere registration of the domain name with a company located in Virginia does not support personal jurisdiction in this state"); *Heathmount A.E. Corp. v. Technodome.com*, 106 F. Supp. 2d 860, 867 (E.D. Va. 2000) ("It seems highly unlikely that Congress thought that the registration of a domain name was, of its own force, sufficient to establish personal jurisdiction over the domain name registrant in the state where the registrar is located.")

Other than the allegation that International Media owns websites which were registered with Domains by Proxy, the Complaint contains not a single allegation which would suggest that International Media has any contacts with Arizona. Because the Complaint has failed to allege sufficient minimum contacts as required by the Due Process Clause of the United States Constitution, general personal jurisdiction does not lie in this Court and the complaint must be dismissed.

### 2.  Specific Jurisdiction

The Ninth Circuit applies a three-part test to determine whether a defendant's contacts with the forum state are sufficient to subject him to the state's specific jurisdiction. Specific jurisdiction "exists if (1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of

or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000). If any of the three requirements is not satisfied, jurisdiction in the forum would deprive the defendant of due process of law. *See Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 270 (9th Cir. 1995).

In order to satisfy the first prong of the Ninth Circuit test for specific jurisdiction, Cybernet must establish International Media either: (1) purposefully availed itself of the privilege of conducting activities in Arizona, or (2) purposefully directed its activities toward Arizona. *Schwarzenegger*, 374 F.3d at 802.

Presumably, given the wholesale lack of facts alleged in the Complaint which would support a finding of specific jurisdiction over the defendants, Cybernet intends to argue that the mere fact that the websites owned by International Media are accessible in Arizona (as they are in the rest of the free world), is a sufficient basis for jurisdiction against International Media. It is not.

Under a purposeful direction analysis, personal jurisdiction can be based upon the so-called "effects test" from *Calder v. Jones*. "Under *Calder*, personal jurisdiction can be based upon: '(1) intentional actions (2) expressly aimed at the forum state (3) causing harm, the brunt of which is suffered – and which the defendant knows is likely to be suffered – in the forum state.'" *Panavision*, *supra*, at 1321 *quoting Core-Vent*, *supra*, at 1486. Foreseeable effects on the forum state are not enough; Cybernet must demonstrate that International Media specifically directed its actions at the forum state. *See Schwarzenegger, supra*, 374 F.3d at 807.

Assuming, a*rguendo*, that the maintenance of a website is a sufficient act in and of itself to constitute an "intentional act," Cybernet nevertheless cannot meet the second or third prongs of the purposeful direction test. First, the mere maintenance of a website available anywhere in the world, does not meet the test of being "expressly aimed at the forum" for the very reason that it is equally available everywhere in the world. *See, e.g. Panavision, supra, at 1322* ("We agree that simply registering someone else's trademark

as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."); *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-420 (9th Cir. 1997) (noting that maintaining a website was not sufficient to constitute "purposeful availment" without "something more" directly targeting the forum state).

Numerous other courts, in applying the effects test, have similarly held that, for specific jurisdiction to be founded on actions expressly aimed at the forum state, the plaintiff must prove that such acts "are performed for the very purpose of having their consequences felt in the forum state." *Dakota Indus., Inc. v. Dakota Sportswear, Inc.*, 946 F.2d 1384, 1390-91 (8th Cir. 1991) (*quoting Brainerd v. Governors of Univ. of Alberta*, 873 F.2d 1257, 1260 (9th Cir. 1989)); *See also Fraserside IP L.L.C. v. Hammy Media, LTD*, 2012 U.S. Dist. LEXIS 5359, 24-25 (N.D. Iowa Jan. 17, 2012) ("Although I accept as true Fraserside's allegations that xHamster intentionally infringed Fraserside's registered copyrights and trademarks, these allegations, alone, fail to demonstrate that xHamster 'uniquely or expressly aimed' its tortious acts at Iowa. ...Although xHamster's website is both commercial and interactive, as an Iowa district court noted in a case presenting similar facts, such a website 'is arguably no more directed at Iowa than at Uzbekistan.'"); *be2 LLC v. Ivanov*, 642 F.3d 555, 558 (7th Cir. 2011) ("If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution."); *Toys "R" Us, Inc. V. Step Two, S.A.,* 318 F.3d 446, 452-54 (3d Cir. 2003) ("[T]he mere operation of a commercially interactive web site should not subject the operator to jurisdiction ... Rather, there must be evidence that the defendant 'purposefully availed' itself of conducting activity in the [jurisdiction]."); *Instabook Corp. v. Instapublisher.com*, 469 F. Supp. 2d 1120, 1127 (S.D. Fla. 2006) (finding insufficient contacts in a patent infringement case since, among other reasons, "Defendant could not reasonably anticipate being haled into court in Florida based on its operation of interactive websites

accessible in Florida and its sales to two Florida residents" in the absence of "targeting or solicitation of Florida residents."); *ESAB Group, Inc. v. Centricut, L.L.C.*, 34 F. Supp. 2d 323, 331 (D.S.C. 1999) ("While it is true that anyone, anywhere could access Centricut's home page, including someone in South Carolina, it cannot be inferred from this fact alone that Centricut deliberately directed its efforts toward South Carolina residents."); *Johnson v. Arden*, 614 F.3d 785, 797-798 (8th Cir. 2010) ("...the Johnsons have failed to prove that www.BoutiqueKittens.com is uniquely or expressly aimed at Missouri; thus *Calder* provides no support for their Lanham Act claim.").

In the present case, Cybernet has not alleged – nor can it allege – that International Media "uniquely or expressly" aimed any of its websites at Arizona as opposed to any other location in the world where the Internet is available. Accordingly, as Cybernet cannot meet the second prong of the effects test, personal jurisdiction is inappropriate in Arizona and the case must be dismissed.

Even if Cybernet could somehow meet the second prong of the effects test, it has not alleged – and cannot hope to allege – that the Defendants aimed their conduct at Arizona *knowing* that it would cause harm to Cybernet there. This is true (among other reasons) because Cybernet does not even allege that it is present in Arizona. To the contrary, Cybernet alleges specifically that it is a New York company with a principal place of business in California. There is no allegation that the Defendants aimed any conduct at Arizona, that harm was caused there, or that Defendants had reason to believe that harm would be felt there. This is fatal to Cybernet's jurisdictional argument. *Cybersell, Inc., supra,* at 420 ("Cybersell FL's web page simply was not aimed intentionally at Arizona knowing that harm was likely to be caused there to Cybersell AZ.") (internal citations omitted); *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d 1082, 1087-88 (9th Cir. 2000) (collecting Ninth Circuit cases and discussing the requirement that the defendant have specific knowledge of the harm to be done in the forum to justify a finding of "express aiming."). Because Cybernet has not, and cannot,

allege facts sufficient to meet the third prong of the effects test, personal jurisdiction against International Media does not lie and the Complaint against it must be dismissed.

### C. Cybernet Cannot Establish Jurisdiction Over International Media Pursuant to Fed. R. Civ. P. 4(k)(2).

To exercise jurisdiction under Fed. R. Civ. P. 4(k)(2), Plaintiff must establish three factors: (1) that the claim arises under federal law; (2) that defendant is not subject to personal jurisdiction in *any* state court of general jurisdiction; and (3) that the court's exercise of jurisdiction comports with due process. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.,* 284 F.3d 1114, 1126 (9th Cir. 2002). In this way, Rule 4(k)(2) "provides for what amounts to a federal long-arm statute in a narrow band of cases in which the United States serves as the relevant forum for a minimum contacts analysis." *Id.*

This Court and the Ninth Circuit have each recognized that it is a rare occurrence indeed for the Court to find jurisdiction under Rule 4(k)(2). Indeed, in *Holland America Line, Inc. v. Windstar Sail Cruises, Ltd.,* 485 F.3d 450 (9th Cir. 2007), the court specifically noted that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the rule." *Id*. at 462. Five years later (for a total of 19), the Ninth Circuit is still waiting for a case in which it finds jurisdiction to be proper under Rule 4(k)(2).

In *Holland America Line*, for example, the court found that the plaintiff could not demonstrate sufficient contacts with the United States, despite having alleged: (a) that an alleged agent of the defendant agreed to a forum selection clause specifying the United States (which the defendants denied); (b) that the defendants "sold products or sponsored web marketing for products that ended up in Washington"; (c) that marketing representatives and trainers visited the United States; (d) that the defendants maintained a marketing website and advertised in various marine publications; and (e) that the defendants made a presentation at a cruise ship leadership forum in Miami, Florida,

where the Defendants sponsored a reception and dinner tables. *Holland America* at 459-460.

Similarly, in *Glencore Grain Rotterdam B.V.*, the court found insufficient the fact that the defendant, a rice exporter located in India had sent a total of 22 shipments of rice from India to ports on the West and East Coasts of the United States as part of its commercial contracts. *See Glencore Grain* at 1127. Finally, in *Doe v. Unocal Corp.*, 248 F.3d 915 (9th Cir. 2001), the Ninth Circuit found insufficient the fact that the defendant corporation's stock was listed on U.S. Stock exchanges and the fact that it had promoted the sale of its stock in the United States. *Id.* at 922.[4]

As noted above, in the Ninth Circuit, a party asserting personal jurisdiction under Rule 4(k)(2) must prove three elements: (1) that the claims arise under federal law; (2) that the defendant is not subject to personal jurisdiction in any state court in the United States; and (3) the exercise of personal jurisdiction comports with the constitutional requirements of due process. *Holland America Line, Inc. v. Wartsila Corporation*, 485 F.3d 450, 461 (9th Cir. 2007). In the present case, it is only the third element which is in dispute. "The due process analysis under Rule 4(k)(2) is nearly identical to traditional personal jurisdiction analysis with one significant difference: rather than considering contacts between the [defendants] and the forum state, we consider contacts with the nation as a whole." *Id.* at 462.

---

[4] *See also Liberty Media Holdings v. Letyagin,* Case No. 11-62107, Docket No. 47. (S.D. Fla. 2011) ("Plaintiff has not shown that Defendant's conduct can, in line with the Constitution, subject it to jurisdiction in this forum. Plaintiff contends that Defendant has 'considerable' web traffic originating from the United States and has presented an exhibit showing that fifteen percent of the visitors to its website are from the United States. ...Precedent, however, establishes that maintaining a website accessible to users in a jurisdiction does not subject a defendant to be sued there; those users must be directly targeted, such that the defendant can foresee having to defend a lawsuit. ... Here, Plaintiff has alleged that Defendant's website receives traffic and business from United States customers but has not met its burden of showing that Defendant did anything to target customers from the United States or even that anyone from the United States made a purchase on Defendant's website."). This unpublished Order from the Southern District of Florida is attached hereto as Exhibit 2 for the Court's consideration because of the extensive factual similarities with this case, as well as the Florida court's cogent analysis of many of the same arguments that are being offered by Plaintiff's counsel in this matter.

The alleged contacts as between International Media and the United States as a whole, though slightly greater than the contacts alleged with respect to Arizona, remain a wholly insufficient basis upon which to assert jurisdiction, particularly because many of the allegations in the Complaint are made without any factual foundation whatsoever.

Indeed, the sum total of additional (non-Arizona) contacts which Cybernet alleges International Media has with the United States amounts to: (a) that it appointed a Digital Millennium Copyright Agent in Florida for the limited purpose of accepting and transmitting notices of alleged copyright infringement from rights holders, (b) that it utilizes a United States based payment processor (a "fact" about which Cybernet is incorrect; *see* Declaration of Igor Gens, attached hereto as Exhibit 1, at ¶ 17), and that (c) it utilizes web hosting services from a United States based company (also an incorrect "fact").  Even if true, these minimal additional contacts – each of which amounts to nothing more than International Media entering into an agreement with an entity in the United States – is an insufficient basis upon which to assert personal jurisdiction.  *See*, *e.g.*, *HK China Group, Inc.,* 417 Fed. Appx. at 666 ("an out-of-state party does not purposefully avail itself of a forum merely by entering into a contract with a forum resident.").

Indeed, in *Holland America Line, Inc.*, the court rejected a finding of personal jurisdiction over the defendants despite the fact that the defendants maintained a website accessible in the United States, had advertised in marine publications distributed in the United States, sent marketing representatives into the United States, and had its representatives visit trade shows in the United States.  Nevertheless, the court concluded that these "scant, fleeting, and attenuated" contacts with the United States were insufficient bases to assert personal jurisdiction over the defendants in the United States.  Indeed, the court there noted that "in the fourteen years since Rule 4(k)(2) was enacted, none of our cases has countenanced jurisdiction under the Rule."

In the present case, International Media simply does not have any significant connections with the United States.  International Media does not operate anywhere in

the United States, owns no real estate anywhere in the United States, pays no taxes anywhere in the United States, and has no bank accounts anywhere in the United States. *See* Declaration of Igor Gens, attached hereto as Exhibit 1, at ¶¶ 5-7, 13-16. International Media is not registered to do business anywhere in the United States, has no employees in the United States, and does not enter into commercial transactions with visitors to its websites in the United States or anywhere else. *Id*. at ¶¶ 5-6, 14-17. These facts belie any argument that International Media has sufficient minimum contacts to subject it to jurisdiction under Rule 4(k)(2) consistent with the due process requirements of the United States Constitution.

## CONCLUSION

Because the Complaint does not – and cannot – allege sufficient facts to support a finding of minimum contacts between International Media and the United States as a whole as would be required by the Due Process Clause of the Constitution, the Court cannot properly assert personal jurisdiction over International Media under Rule 4(k)(2) and, accordingly, the case against it should be dismissed.

DIOGUARDI FLYNN LLP


By:   /s/ John Flynn
         John P. Flynn
         Todd A. Williams
         7001 N. Scottsdale Road, Suite 2060
         Scottsdale, AZ 85253
         *Attorneys for IG Media Inc.;*
         *International Media Ltd.;and Igor Gens*

I hereby certify that on August 6th, 2012, I electronically transmitted the attached document to the Clerk of the United States District Court, District of Arizona, using the Online e-filing system.

By  /s/ Megan Barber