John P. Flynn (# 015065)
Todd A. Williams (# 020066)
DIOGUARDI FLYNN LLP
7001 N. Scottsdale Road, Suite 2060
Scottsdale, AZ 85253
Telephone: (480) 951-8800
Facsimile: (480) 951-8824
jflynn@dioguardiflynn.com
twilliams@dioguardiflynn.com

Valentin D. Gurvits (# 643572)
Boston Law Group, LLP
825 Beacon Street, Suite 20
Newton Centre, MA  02459
Telephone: (617) 928-1804
Facsimile: (617) 928-1802
vgurvits@bostonlawgroup.com

Evan Fray-Witzer (#564349)
Ciampa Fray-Witzer, LLP
20 Park Plaza, Suite 804
Boston, MA 02116
Telephone: (617) 426-0000
Facsimile: (617) 423-4855
evan@CFWlegal.com

*Attorneys for International Media, Inc.,*
*incorrectly named herein as International Media, Ltd.*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cybernet Entertainment LLC,<br>A New York Company,<br><br>                              Plaintiff,<br><br>v.<br><br>IG Media Inc. and International Media Ltd. dba YouJizz.com JizzHut.com and JizzOnline.com and OnlyJizz.com and MoviesGuy.com and JizzBo.com and HotFunHouse.com and Igor Gens and DOES 1-10 inclusive and DOES COMPANIES 1-100 inclusive<br><br>                              Defendants. | Case No. 2:12-CV-01101-SRB<br><br>**INTERNATIONAL MEDIA, INC.'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

Plaintiff's Response to International Media, Inc.'s Motion to Dismiss (the "Response") boils down to two equally flawed arguments: (1) that a limited forum selection clause in a domain registrar's terms of use somehow operates as a blanket waiver regarding Arizona personal jurisdiction; and (2) that combining a few isolated and attenuated contacts with the United States as a whole, completely unrelated to Plaintiff's allegations of copyright infringement, somehow confers personal jurisdiction over Defendants anywhere in the United States.  As set forth below, Plaintiff's arguments are woefully insufficient to permit the exercise of personal jurisdiction over International Media, Inc. ("International Media") by this Court, and this matter should be dismissed.

**I.   The Forum Selection Clause in the Agreement with Domains By Proxy Has No Application in this Matter**

The Response asserts that International Media has agreed to personal jurisdiction in this Court by virtue of its having registered domain names through Domains by Proxy, which Plaintiff assumes constitutes acceptance of Domains By Proxy's Terms of Use.  Even assuming that Plaintiff is correct, the Terms of Use at issue provide that:

> Except as provided immediately below, You agree that any action *relating to or arising out of this Agreement*, shall be brought exclusively in the courts of Maricopa County, Arizona.  For the adjudication of *domain name registration disputes*, you agree to submit to the exclusive jurisdiction and venue of the U.S. District Court for the District of Arizona located in Phoenix, Arizona.

Exhibit 7 to Plaintiff's Response, at § 10(b) (emphasis added).  Plaintiff's sole argument attempting to fit the square peg of the instant dispute into the round hole of these Terms of Use is that "Plaintiff's claims arise out of Defendant's use of the websites, and registration is a necessary part of use of a website."  In other words, Plaintiff argues that the very limited language contained in the "forum selection clause" quoted above should be interpreted as International Media's acceptance of personal jurisdiction in Arizona for *any* dispute with *any* party that has *anything* to do with its website, simply because it chose an Arizona domain name registrar.

1    Plaintiff cites *Productive People, LLC v. Ives Design*, 2009 WL 1749751 (D. Ariz. 2009) in support of its argument that International Media has consented to jurisdiction in this Court. In *Productive People*, Judge Snow of this Court was faced with a defendant that had registered the domain name "www.namedrop.com." Plaintiff had previously trademarked the word "Namedrop," and sued the defendant alleging that its use of the "www.namedrop.com" domain name was an infringement of plaintiff's trademark. In other words, the case turned on a dispute regarding the actual domain name. Although the clause providing for exclusive jurisdiction of domain name disputes in the District of Arizona was nearly identical to the clause at issue here, Judge Snow highlighted the critical distinction between the facts in *Productive People* and the facts at issue in this matter – "[t]his case clearly involves a 'dispute concerning the use of [a] domain name registered with [GoDaddy.com]." *Id*. at *1.

    Plaintiff also relies on *Liberty Media Holdings, LLC v. Vinigay.com*, 2011 WL 7430062 (D. Ariz. 2011), asserting that it is "nearly identical to this [case]." Response at 6:23. As an initial matter, Plaintiff's Response omits the critical context necessary to evaluate the *Vinigay* case. First, the Response fails to note that Magistrate Judge Anderson's decision was in the context of a hearing regarding default damages after defendants failed to appear and default was entered. Defendants never made an appearance in the matter, including the default damages hearing, so only Plaintiff was heard on all of the issues. Second, the "forum selection clause" at issue in *Vinigay* was substantially broader than the provision at issue here. The *Vinigay* clause provided:

> You agree that any action relating to or arising out of these Terms of Use shall be brought in the state or federal courts of Maricopa County, Arizona, and you hereby consent to jurisdiction and venue in the state and federal courts of Maricopa County, Arizona, and you hereby consent to (and waive all defenses of lack of personal jurisdiction and forum non conveniens with respect to) jurisdiction and venue in the state and federal courts of Maricopa County, Arizona.

*Id*. at *8. Magistrate Anderson cited only the *Productive People* decision in support of his analysis on the applicability of the forum selection provision and, as noted above,

2

1  Judge Snow clearly established that the forum selection clause at issue is limited to
2  **domain name** disputes in the *Productive People* case.  At best, this unpublished *ex parte*
3  decision involving substantially different contractual language should be limited to its
4  facts.

5  Despite the clarity of the Terms of Use in restricting the consent to personal
6  jurisdiction in this Court to "**domain name registration disputes**," Plaintiff is left
7  desperately arguing that "Plaintiff's claims arise out of Defendant's use of the websites,
8  and registration is a necessary part of use of a website." A review of Plaintiff's
9  Complaint reveals that it has absolutely nothing to do with Defendants' domain names
10 or the registration agreement with Domains by Proxy.  The Complaint contains no
11 allegations asserting that Defendants' domain names (youjizz.com, jizzhut.com,
12 jizzonline.com, onlyjizz.com, moviesguy.com, jizzbo.com, and hotfunhouse.com) are
13 somehow an infringement of Plaintiff's copyrights or trademarks. To the contrary,
14 Plaintiff's Complaint is clear that Plaintiff's claims arise from alleged copyright
15 infringement from the display of Plaintiff's copyrighted videos on these websites.  For
16 obvious reasons, the Terms of Use cannot be read so broadly.

17 International Media's President, Igor Gens, attests that International Media
18 interpreted the clause at issue as limited to domain name disputes under its plain terms,
19 and never would have used the services of Domains by Proxy had it known that this
20 provision could be interpreted as a consent to personal jurisdiction in Arizona for any
21 and all disputes relating to International Media's websites.  *See* Supplemental
22 Declaration of Igor Gens, attached hereto as Exhibit A.  Despite Plaintiff's desperate
23 attempts to re-cast its claims in such a way as to fall within the "domain name dispute"
24 limitation, Plaintiff's Complaint simply has nothing to do with Defendants' domain
25 names.

26 Finally, the Court should also consider the practical ramifications of what
27 Plaintiff is suggesting.  As noted in International Media's Motion, Domains By
28 Proxy/GoDaddy is the largest internet domain name registrar in the world, claiming over

3

53 million domains. Under Plaintiff's argument, the owners of all 53 million domains would be subject to unlimited personal jurisdiction in the District of Arizona for any claim with any connection to the websites operated under these 53 million domains, regardless of the extent (or absence) of any contacts with Arizona or the United States. For obvious reasons, Plaintiff's "forum selection clause" argument is neither legally supportable nor factually plausible.

**II.   International Media Lacks Sufficient Contacts with the United States to Support Nationwide "Long Arm" Jurisdiction under Rule 4(k), Fed.R.Civ.P.**

Apparently recognizing the attenuated nature of the contacts between International Media and Arizona or the United States, Plaintiff's Response tacitly concedes that Arizona lacks sufficient minimum contacts to establish specific jurisdiction over International Media, and further admits that International Media lacks sufficient connections with either Arizona or the United States to establish general personal jurisdiction. Plaintiff's sole argument to support the exercise of personal jurisdiction over International Media in this Court (other than the forum selection clause argument addressed above) is that the Court can exercise specific jurisdiction over International Media by virtue of the nationwide "long arm" rule set forth in Rule 4(k), Fed.R.Civ.P.

As discussed in detail in International Media's Motion, while Rule 4(k)(2), Fed.R.Civ.P., provides a mechanism for extending personal jurisdiction by aggregating a defendant's contacts with the United States as a whole, it is only available under a narrow set of circumstances. Indeed, in the 19 years since the Rule was enacted, the Ninth Circuit has yet to have a case hold the application of the Rule appropriate. *See*, *e.g.*, *Holland America Line, Inc. v. Windstar Sail Cruises, Ltd.*, 485 F.3d 450, 462 (9th Cir. 2007). Courts addressing personal jurisdiction under Rule 4(k)(2) have routinely rejected such cases based on isolated, limited and attenuated contacts such as those alleged by Plaintiff here.

### A. Purposeful Availment

Despite the authorities described above rejecting attenuated and isolated contacts offered in support of nationwide long arm jurisdiction, Plaintiff offers only the following alleged contacts as meeting the requirement of "purposeful availment" in this matter: (1) permitting uploads, downloads, and then displaying videos that belong to Plaintiff; (2) an "agreement" with youjizzpremium.com, which offers its paid membership in U.S. dollars and is entirely in English; (3) harm is suffered in the U.S. because Plaintiff is a U.S. company; and (4) ads on Defendants' website that "target" consumers based on their location. As addressed below, these alleged contacts fail to demonstrate any targeting of the United States by International Media.

### 1. Uploads, downloads and displaying videos that belong to Plaintiff

As even Plaintiff's Response acknowledges, the intentional acts that constitute "purposeful availment" for purposes of personal jurisdiction must be "expressly aimed at the forum." Response at 9:7-11. Whatever else may be said about Plaintiff's allegations regarding the ability of visitors to International Media's websites to upload or download copyrighted material, many of which are false, they simply do nothing to establish intentional targeting of the forum. The features of International Media's websites are available to everyone with access to the Internet throughout the world, and are no more targeted to the United States than they are to Thailand or Poland.

Plaintiff asserts that International Media's targeting of the U.S. is established because, it claims, "[t]he primary visitors to Defendant's websites are U.S. residents." Setting aside, for the moment, the fact that Plaintiff's asserted statistics are inaccurate, they are simply irrelevant -- the percentage of visitors from the U.S. to International Media's websites does nothing to establish *targeting* of U.S. residents by International Media. It is not enough to establish that U.S. citizens take more frequent advantage of the opportunity offered by International Media to literally every individual in the world with Internet access. To the contrary, Plaintiff must identify specific intentional acts expressly aimed at the forum from which its claims arise. As discussed in detail in

5

International Media's Motion, courts are effectively unanimous in holding that operating a website accessible in the forum, without "something more" that directly targets the forum, is not sufficient to establish personal jurisdiction. *See*, *e.g.*, *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418-420 (9th Cir. 1997). Plaintiff has failed to identify the "something more," or anything, by which International Media directly targeted the United States.

### 2. The alleged connection with youjizzpremium.com

Plaintiff also contends that there is an "agreement" with the youjizzpremium.com website, and that this connection means that the fact that the youjizzpremium site charges its members a fee in U.S. dollars (and is entirely in English) is somehow imputed to International Media. As set forth in the Declaration attached as Exhibit 1 to the Motion, and the Supplemental Declaration attached as Exhibit A hereto, however, the "agreement" with the owner of the youjizzpremium site was nothing more than the same arrangement International Media had with any of the advertisers on its sites. Contrary to the assertions in the Response and the Declaration of Jason Tucker attached thereto, International Media did not "share the revenue" from the youjizzpremium site, nor did it benefit financially from sales at youjizzpremium.[1]

### 3. Plaintiff suffered harm in the United States

Assuming, arguendo, that Plaintiff can establish that it has suffered harm as a result of the actions of International Media (a contention that International Media disputes), International Media does not contest that Plaintiff suffered such harm in the United States. That concession, however, does nothing to establish that International Media expressly aimed intentional actions at the United States.

---

[1] This is not a "factual dispute" of the type that should be resolved in favor of Plaintiff in the context of a motion to dismiss for lack of personal jurisdiction. As Mr. Tucker's Declaration makes clear, he has no personal knowledge regarding the actual terms of any "agreement" between International Media and the owner of youjizzpremium.com, and his testimony in this regard is limited to his understanding of common arrangements in the industry. Such generalizations are insufficient to create a "factual dispute" in the face of a proper declaration based on personal knowledge.

### 4. Ads "targeted" to the location of the person viewing the website

The Response makes much of the fact that certain of International Media's websites contain so-called "banner ads" that are "targeted" to the location of the individual visiting the website. In Plaintiff's view, the fact that an Arizona resident that visits the sites from Arizona will see advertising directed to Arizona is indicative of targeting of Arizona residents by International Media. The primary problem with Plaintiff's argument, however, and one that is prevalent throughout the Response, is that Plaintiff fails to distinguish between the business of International Media and its websites, on the one hand, and the businesses of companies that advertise on International Media's website, on the other.

As an initial matter, it is important to be clear about what Plaintiff is asserting and the nature of the targeted "banner ads" that are present on International Media's websites. In the cases cited by Plaintiff that involve the use of advertising in the forum to establish personal jurisdiction, the defendant was advertising in the forum as part of its own marketing strategy, to drive additional business for itself. *See*, *e.g.*, *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007 (9th Cir. 2002). The banner ads on International Media's websites do not advertise International Media's websites, or seek to drive additional visitors to International Media's websites. Rather, these ads are purchased by unrelated companies seeking to drive additional visitors that are already present on International Media's websites to their separate and unrelated websites. Moreover, these "banner ads" are no more "targeted" at the U.S. than they are anywhere else. The ads "target" the location of the visitor. If the visitor is from Portugal, they see the third-party ads that are "targeted" to Portugal.

There is almost no case law directly addressing the impact of these type of "targeted banner ads" on the personal jurisdiction inquiry, but the case of *Zamora Radio, LLC v. Last.FM Ltd.*, 2011 WL 2580401 (S.D. Fla. 2011) is instructive. In *Zamora*, the court first analyzed the plaintiff's allegations regarding personal jurisdiction based on the defendant's website under the "sliding scale" analysis of interactivity first delineated

in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997), which has also been adopted in the Ninth Circuit. *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997). Similar to this case, the *Zamora* court noted that the website fell in the middle ground of the scale of interactivity, noting that: (1) the website was not entirely passive as it allowed visitors to sign up for a newsletter, provide feedback via a form, and allowed users to "build their own channel;" and (2) the website did not qualify as fully interactive because it was not a membership or subscriber service and any person with internet access could access the site free of charge and without creating an account or registering. *Zippo Mfg.*, 952 F.Supp. at *4.

The *Zamora* court went on to analyze plaintiff's allegations that the defendant had targeted Florida residents because the site contained hyperlinks to Florida related businesses and some of its banner ads were targeted to the location of the visitor, including Florida. In words that are equally applicable here, the *Zamora* court rejected these arguments as a basis for personal jurisdiction, noting:

> Although Defendant AccuRadio concedes that some of AccuRadio's ad-serving vendors may display different commercial ads to different viewers of AccuRadio's site based on the viewer's location, we agree that *these advertisements are not for **AccuRadio's** service and AccuRadio merely provides banner advertising space on its website for unrelated products and services*.
>
> . . .
>
> If it were otherwise, all media outlets that feature advertisements may become subject to personal jurisdiction in any state *regardless of whether they have actually directed **their own** business activities to the forum*.

*Id.* at *7-8 (emphasis added; internal citations omitted). *See also*, *Family Watchdog, LLC v. Schweiss*, 2009 WL 2151152, *5 (M.D. Fl. 2009)(rejecting plaintiff's argument that personal jurisdiction was proper based on advertisement for and link to website based in forum stating that "[w]hile the Schweiss Defendants may have an agreement regarding the posting of NRA's ad, that arrangement does not render NRA their 'middleman' or amount to 'doing business in Florida' in and of itself."); *Roblor Mktg. Group, Inc. v. Gps Indus., Inc.,* 645 F. Supp. 2d 1130, 1155 (S.D. Fla. 2009)("The

1 presence of active links on Intelligolf's website is not, and should not be, enough. We agree that the fact that the website of a company that sells products in Florida can be reached via a link on Intelligolf's website is too narrow a thread on which to find a meaningful contact for the purposes of due process."); *Dynetech Corp. v. Leonard Fitness, Inc.,* 523 F. Supp. 2d 1344, 1347 (M.D. Fla. 2007)(advertising link on website "too narrow a thread on which to find a meaningful 'contact' for the purposes of due process"); *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998) ("In simple terms, doing business with a company that does business in Minnesota is not the same as doing business in Minnesota.").

Plaintiff has failed to establish any purposeful availment by International Media in the United States by which it could "anticipate being haled into court" here. Accordingly, the Motion to Dismiss should be granted.

### B. Plaintiff's Claims Do Not Arise from International Media's Attenuated Contacts with the United States

Plaintiff's Response blithely glosses over the requirement in specific jurisdiction cases that Plaintiff's claims arise out of International Media's forum related activities, asserting that "[a]ll of Defendant's activities in the U.S. concern the operation of its websites, and the websites are the source of the copyright infringement." Response at 11:1-6. Of course, at this remarkable level of generality, any claim could be found to "arise out of" any contact, no matter how attenuated or isolated.

In the Ninth Circuit, a claim arises out of forum activities for purposes of establishing personal jurisdiction if it would not have been injured "but for" the defendant's conduct in the forum. *Rio Properties, Inc. v. Rio International Interlink*, 284 F.3d 1007, 1021 (9th Cir. 2002). In this case, Plaintiff has not claimed, nor can it, that its claims would not have arisen but for International Media's limited contacts with the U.S. Plaintiff's claims are predicated on the allegation that its copyrighted videos are available for viewing on International Media's websites. These claims, if proven, would still exist if none of the contacts alleged by Plaintiff (U.S. registrar, banner ads,

server space) were present in the U.S. Accordingly, Plaintiff cannot meet the "but for" test to establish that its claims arise out of International Media's contacts in the United States. Because Plaintiff cannot meet the burden of establishing the first two elements for nationwide long arm jurisdiction, the Court need not even reach Plaintiff's arguments regarding whether the exercise of jurisdiction would be reasonable.

**III. The Court Should Not Permit Jurisdictional Discovery**

Plaintiff's Response asserts that "discovery should be permitted to determine the quality and quantity of contacts of U.S. residents with the websites, including uploads and downloads, the extent of sales to U.S. and Arizona consumers through the premium website, and the extent of advertisements and ad revenues coming from companies targeting U.S. and Arizona consumers." Response at 15:14-19. Such discovery simply will not assist Plaintiff in establishing personal jurisdiction that does not exist.

As an initial matter, both the extent of sales "through the premium website" and "the extent of advertisements and ad revenues coming from companies targeting U.S. and Arizona consumers" are completely irrelevant to the question of personal jurisdiction over International Media. International Media has provided the Court with a sworn Declaration noting that "the premium website" is neither owned nor operated by International Media, and International Media receives no revenue from the operation of that site. Similarly, as noted above with respect to "banner ads" targeting U.S. visitors, "doing business with a company that does business in [the United States] is not the same as doing business in [the United States]." *Red Wing Shoe Co. v. Hockerson-Halberstadt, Inc.*, 148 F.3d 1355, 1361 (Fed. Cir. 1998).

Finally, Plaintiff's request for discovery "to determine the quality and quantity of contacts of U.S. residents with the websites" is too general and speculative to support its request for discovery in this matter. As addressed thoroughly in the Motion, the authorities are unanimous that merely operating a website accessible in the forum will not support personal jurisdiction. Plaintiff makes no effort to specifically identify what discovery it believes may support jurisdiction or what contacts it believes may exist in

addition to the minimal contacts alleged in its Complaint and Response. Under these circumstances, discovery should be denied. *See*, e.g., *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008 (denying discovery was proper where plaintiff's request "was based on little more than a hunch that it might yield jurisdictionally relevant facts."); *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (holding denial of jurisdictional discovery proper where plaintiffs "state only that they 'believe' discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction."); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006) ("[w]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery."). Plaintiff has failed to provide any specifics regarding the type of discovery that it seeks to take, or how that discovery will support its assertion of personal jurisdiction. Accordingly, Plaintiff's request for jurisdictional discovery should be rejected.

DATED this 10th day of September, 2012.

                    DIOGUARDI FLYNN LLP

                    By:    /s/ John P. Flynn
                           John P. Flynn
                           Todd A. Williams
                           7001 N. Scottsdale Road, Suite 2060
                           Scottsdale, AZ 85253
                           *Attorneys for International Media, Inc., incorrectly named herein as International Media Ltd.*

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 10th, 2012, I electronically transmitted the attached document to the Clerk of the United States District Court, District of Arizona, using the online e-filing system.


By____/s/ Megan Barber_____