John P. Flynn (# 015065)
Peter J. Moolenaar (# 024487)
**DIOGUARDI FLYNN LLP**
7001 N. Scottsdale Road, Suite 2060
Scottsdale, Arizona 85253
Telephone:    (480) 951-8800
Facsimile:    (480) 951-8824
jflynn@dioguardiflynn.com
pmoolenaar@dioguardiflynn.com

Evan Fray-Witzer (*pro hac vice*)
**CIAMPA FRAY-WITZER LLP**
20 Park Plaza, Suite 505
Boston, Massachusetts 02116
Telephone:    (617) 426-0000
Facsimile:    (617) 423-4855
evan@CFWlegal.com

Valentin David Gurvits (*pro hac vice*)
Matthew Shayefar (*pro hac vice*)
**BOSTON LAW GROUP, PC**
825 Beacon Street, Suite 20
Newton Center, Massachusetts 02459
Telephone:    (617) 928-1804
Facsimile:    (617) 928-1802
vgurvits@bostonlawgroup.com
matt@bostonlawgroup.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Cybernet Entertainment LLC, a New York Company<br><br>    Plaintiff,<br><br>-v.-<br><br>IG Media Inc. and International Media Ltd. d/b/a YouJizz.com JizzHut.com, and JizzOnline.com and OnlyJizz.com and MoviesGuy.com and JizzBo.com and HotFunHouse.com and Igor Gens<br><br>    Defendants. | Case No. 2:12-cv-01101-SRB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER PURSUANT TO FED.R.CIV.P. 65** |

1

Defendants, by and through undersigned counsel, hereby respond to and oppose Plaintiff's *Ex Parte* Application for Temporary Restraining Order Pursuant to Fed.R.Civ.P. 65 (the "TRO Application"). This Opposition is supported by the following Memorandum of Points and Authorities and the Declarations filed concurrently herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     INTRODUCTION

Plaintiff has waited fifteen (15) months since initiating this relatively standard copyright infringement lawsuit (*i.e.*, filed May 24, 2012) to seek what is, in effect, a pre-judgment attachment order of unidentified accounts purportedly residing with unnamed banks and a handful of third-party on-line payment processing companies, all of which are strangers to this litigation. Plaintiff's proposed Order belies the allegations of any concern with respect to purported copyright infringement. Indeed, completely absent from the proposed Order is any mention of the alleged copyright materials.

Plaintiff has not undertaken a single action which might signal a legitimate concern or demonstrate any effort to prove its case, such as propounding a single discovery request, since this lawsuit was filed. Instead, Plaintiff's remarkable submission of the TRO Application demonstrates that Plaintiff has no interest in protecting copyright interests, but instead seeks to avoid having this case proceed through discovery and proper motion practice so its alleged evidence is tested in this Court. The TRO Application is an unadulterated, albeit woefully misdirected "money-grab" designed to threaten Defendants' business operations so it belatedly agrees to settle this matter – something Mr. Jason Tucker makes a living at while trying to extract from all manner of lawful business owners as he chums the waters for willing clients to march with him into litigation.

////

////

As demonstrated below, the TRO Application establishes no legal entitlement to the issuance of any equitable order, much less the unenforceable proposed Order submitted by Plaintiff with its filing.

## II. LEGAL ANALYSIS

### A. Standards for Issuance of a TRO

Plaintiff's TRO Application does not demonstrate that it is likely to (1) prevail on the merits, (2) suffer irreparable harm in the absence of injunctive relief, (3) that the balancing of equities tips in favor of issuance of the requested injunctive relief, or (4) issuance of the injunction is in the public interest. *Winter v. Natural Res. Def. Counsel, Inc.,* 555 U.S. 7, 20 (2008). Further, "[i]n cases such as the one before us in which a party seeks mandatory preliminary relief that goes well beyond maintaining the status quo *pendent lite*, courts should be extremely cautious about issuing a preliminary injunction. *See Stanley v. Univ. of S. Calif.*, 13 F.3d 1313, 1319 (9th Cir. 1994). Here, there can be no question that the extraordinary proposed Order goes far past maintaining the status quo – it seeks to bring the Defendants to their knees and drive them either out of business or to the settlement table based upon putative copyright infringements that constituted a tiny fraction of the content resident on International Media's websites.

Importantly, a party requesting a court freeze assets must additionally show a **likelihood of dissipation of the claimed assets**, or other inability to recover monetary damages, if the requested extraordinary relief is not granted. *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). In this case, the TRO Application cannot and therefore does not assert any evidence supporting the movement of monies, transfer of bank accounts or <u>any</u> inability Plaintiff would have in recovering monetary damages. Instead, Plaintiff blindly asserts that there is a "serious threat" that Defendants are preparing to move their U.S. based accounts off shore. TRO Application p. 14. The simple truth is that Defendants do not maintain any accounts with any financial institutions in the United States and have

not maintained any such accounts since before Plaintiff initiated this action. *See* Declaration of Igor Gens ¶ 10. As such, the Defendants respectfully submit that the TRO Application fails on the papers, the extraordinary relief is moot and should be denied, with the pending hearing vacated.

### B. Plaintiff's TRO Application Fails to Satisfy Any of the Applicable Standards

#### a. Plaintiff Cannot Establish it is Likely to Prevail on the Merits

Notwithstanding the 544 paragraph, 154 page filing that comprises Plaintiff's Complaint, this matter is a copyright infringement case that will, in large part, call in to question the existence of any protected works owned by Plaintiff, the content/nature/delivery of Plaintiff's putative DMCA take-down "notices", Plaintiff's unclean hands in commencing litigation concerning works that they had asked the Defendants to post on the websites, Defendant International Media's status as an Internet Service Provider ("ISP") under the Digital Millennium Copyright Act ("DMCA"), and the application of the safe harbor provisions of Section 512 of DMCA to the operations of International Media. In the unlikely event Plaintiff were to succeed in this lawsuit on its merits, it would be entitled to request **money damages** and an order barring Defendants from taking any action to violate its copyrights – nothing more and nothing less from this Court - and the Copyright Act establishes the applicable statutory measure.

Regardless, Plaintiff's marginal pursuit of this lawsuit certainly should not entitle it to recover a pre-judgment order of attachment which, by design, would drive Defendants out of business immediately. Equity certainly does not support the issuance of such a draconian, albeit unenforceable order where, on its best day and assuming it proves each of its alleged infringements (and no application of the safe-harbor provisions of Section 512 of the DMCA), Plaintiff would still be limited to a recovery of money damages, a remedy which classically cannot support

4

injunctive relief. Moreover, and as discussed below, given that Plaintiff's materials constituted less than one-fiftieth of one-percent of the files available on the Defendants' websites, the seizure of 100 percent (100%) of the Defendants' assets would not be equity, it would be perverse.

The websites operated by International Media are open and free of charge to anyone accessing the Internet over the age of 18. Declaration of Igor Gens in Support of Defendant's Opposition to Plaintiff's Application for Temporary Restraining Order Pursuant to Fed.R.Civ.Pro. 65 ("Gens Decl."), ¶ 7. Visitors to the sites are not charged a fee to access the sites. *Id.* Similarly, individuals that upload videos or content to the websites operated by International Media are not compensated by International Media. *Id.* at ¶ 29. International Media generates revenue solely through the sale of advertising space on its various websites. International Media has two customers that advertise on its websites with whom it handles the customer relationship directly, and all other revenues are generated utilizing the services of an Internet advertising broker to sell space on its websites. *Id.* at ¶ 8. Advertisers that pay to advertise on International Media's websites pay the fees for their advertising to the broker, and the broker remits a single monthly check to International Media that combines all advertising revenue regardless of its source. *Id.* Plaintiff's putatively protected works account for approximately 0.017% of the files resident on International Media's server. *Id.* at ¶ 69.

Defendant International Media is an ISP as that term is defined in the DMCA and discovery and motion practice will establish the application of that definition in the ordinary course. *Id.* at ¶ 59. As addressed in Mr. Gens' Declaration, International Media has established and dutifully operates its business in conformity with the DMCA such that the evidence will establish that the safe harbor provisions apply to its operations in this case. *Id.* at ¶¶ 58-64. Although Defendants' concede that an International Media independent contractor inadvertently permitted the reposting of a small percentage of the previously

5

disabled files for a short period of time[1] (*Id.* at ¶¶ 50-54; Declaration of Chad Brachat in Support of Defendant's Response to Plaintiff's Application for Temporary Restraining Order Pursuant to Fed.R.Civ.Pro. 65 ("Brachat Decl."), ¶¶ 13-16), that single error does not constitute evidence of a failure to maintain a systematic method of responding reasonably and in good faith to putatively compliant DMCA take-down notices, while ensuring a repeat infringer policy is in place and active. Gens Decl., ¶¶ 49, 56-57, 62-63.  Furthermore, although Plaintiff has asserted that it has issued DMCA compliant take-down notices and Defendants failed to reasonably act to disable or remove the allegedly offending materials, those allegations have not been substantiated and tested via proper and ordinary course discovery.

Although Defendants are confident Plaintiff will never be able to prove its case or support any of the myriad of causes of action it has put forth in this action, it is incontrovertible that substantial discovery, expert testimony, motion practice and potentially a trial will be required to test the sufficiency of both the claims and applicable defenses.  It similarly cannot be disputed in good faith that this Court should be called upon to consider the merits of those technical DMCA matters based upon competing declarations and the protestations of Plaintiff set forth in its long-belated TRO Application.  Simply put, the parties competing positions on the factual underpinnings of their respective claims and defenses are incapable of being weighed and resolved in an expedited TRO proceeding.[2]

---

[1] Some of which Plaintiff authorized to upload. Gens Decl., ¶ 55.

[2] Undersigned counsel litigated these very issues for approximately ten (10) years in the matter of *Perfect 10, Inc. v. CCBill, LLC et al*, from the US District Court, Central District of California, 340 F. Supp. 1077 (C.D. Cal. 2004), through the Ninth Circuit, 488 F.3d 1102 (9th Cir. 2007) and until the matter was resolved when the defendants in that action successfully opposed certiorari before the US Supreme Court. 128 S. Ct. 709. The issues litigated in that action similarly focused on resolving questions concerning the character and composition of plaintiff's putative DMCA take-down notices, defendants' status as ISPs, and the application of the safe harbor protections afforded under Section 512.  Discovery and motion practice before the Central District of California Court in that matter took

6

### b. Plaintiff cannot show irreparable harm

Notwithstanding Plaintiff's efforts to breeze by the applicable standards while relying upon unpublished or mis-cited legal authorities, the courts have established that harm is irreparable only when it cannot be remedied except through injunctive relief. *See Metro–Goldwyn–Mayer Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp.2d 1197, 1210 (C.D. Cal. 2007). Economic damages are not traditionally considered irreparable because the injury can later be remedied by a damage award. *Cal. Pharmacists Ass'n v. Maxwell–Jolly,* 563 F.3d 847, 852 (9th Cir. 2009). As the Supreme Court explained in *Sampson v. Murray,* 415 U.S. 61, 90, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), "the temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury.... The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Id.*

Indeed, the burden on Plaintiff is even higher where, as here, the relief requested amounts to a freeze of Defendants' assets. "An asset-freeze injunction is improper if used solely to preserve assets for use in satisfying a claim for money damages." *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 330-33 (1999)). *See also Amylin Pharms., Inc. v. Eli Lilly & Co.*, 456 Fed. Appx. 676, 678 (9th Cir. 2011) ("[P]rofits due to lost sales generally constitutes the type of harm that is fully compensable through money damages and therefore does not support injunctive relief. . . . Amylin, as the party seeking injunctive relief, has the burden of making a clear showing that it is entitled to injunctive relief, which includes demonstrating a likelihood of irreparable harm."

---

approximately two and one half years and involved countless depositions, hundreds of thousands of pages of discovery and related productions, and substantial motion practice and hearings before the court. The defense in this present action will most assuredly follow a similar path, assuming Plaintiff proceeds to undertake any action to prosecute its claims via discovery and motion practice.

7

(citations omitted)); *Dateline Exports., Inc. v. Basic Constr., Inc.*, 306 F.3d 912, 914 (9th Cir. 2002) ("*In Grupo Mexicano*, the Supreme Court held that a district court does not have the authority to issue a preliminary injunction preventing a party from disposing of assets pending adjudication of a claim for money damages. . . . The Court noted that 'before judgment (or its equivalent) an unsecured creditor has no rights at law or in equity in the property of his debtor.' . . . The Court held that a creditor with no rights to the property of a debtor could not seek to restrain the debtor's use of its property." (citations omitted)).

Plaintiff's proposed Order submitted with its TRO Application is telling in establishing that Plaintiff has no interest in either protecting its alleged copyrights or pursuing the available and legally adequate financial remedies it would be entitled to if it pursued this litigation to a trial on its merits. Instead, Plaintiff's proposed Order is singularly and solely focused on the attachment of all monies flowing through amorphously described accounts and, as such, seeks relief which is improperly the subject of the TRO Application. Plaintiff requests the Court take this most extreme and exceptional pre-judgment/collection action without even alleging that Defendants are insolvent or engaged in a pattern of secreting assets in order to render themselves judgment proof. *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009). Importantly, Plaintiff only alleges—without any evidentiary support—there is a "threat" that Defendants are "preparing to move" their U.S. based financial accounts. Unsubstantiated perceived threats of future action are not sufficient to justify the extraordinary relief Plaintiff has requested.

Lest there is any doubt, International Media is a thriving commercial concern and faces no present prospects concerning insolvency. Further, the Defendants have not moved monies or financial accounts from the United States or otherwise as confirmed in Mr. Gens' Declaration. Gens Decl., ¶ 10. Indeed, Defendants do not have any financial accounts in the United States and have not had any such accounts since before the initiation of this action by Plaintiff. Gens

Decl., ¶ 10. With the exception of the commercially reasonable and prudent change of certain domain registrars undertaken by International Media (a longstanding non-US company with no US presence) (*Id.* at ¶¶ 65-67), and a single inadvertent reactivation of a small set of previously removed/disabled content by an independent contractor (*Id.* at ¶¶ 50-54; Brachat Decl., ¶¶ 13-16), no circumstances have changed since the initiation of this lawsuit fifteen months ago. And since the DMCA does not require perfection with respect to DMCA compliance (*Perfect 10, Inc. v. CCBill, LLC et al*, 488 F.3d 1102 (9th Cir. 2007)), and because there is no evidence supporting a conclusion that the Defendants are insolvent or secreting assets in order to render themselves judgment proof, Plaintiff's extraordinary relief must be denied. Further, the Defendants have confirmed that they will ensure the small and select files that were inadvertently reactivated by International Media's independent contractor and subsequently disabled and removed upon notice are securely quarantined and not published on the International Media website during the pendency of this action. Gens Decl., ¶ 57.

Furthermore, irreparable harm must be imminent for the Court to entertain the issuance of any equitable order of restraint. Any significant delay in pursuing an injunction, such as we have in this case, is relevant in determining whether the requested or any form of injunctive relief is necessary. *See Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 129 S.Ct. 365 (2008); *Oakland Tribune, Inc. v. Chronicle Publ'g Co.,* 762 F.2d 1374, 1377 (9th Cir.1985); *Lydo Enters. v. Las Vegas,* 745 F.2d 1211, 1212 (9th Cir.1984) (holding that a preliminary injunction is "sought upon the theory that there is an urgent need for speedy action to protect the plaintiff's rights").

In this instance, Plaintiff set forth 544 paragraphs in its Complaint, replete with hundreds of pages of exhibits, purporting to represent evidence of alleged copyright infringement. Notwithstanding this bold pleading move, Plaintiff sat on its hands for fifteen (15) months before seeking a pre-judgment attachment order

D0089876-2/10410-001

via its belated TRO Application. Even if the Court were to consider Plaintiff's justification for delay in that exigencies exist because of some dramatic changed circumstances, Plaintiff did not and will not be able to assert that money damages will be inadequate in the unlikely event it is able to prove its case after discovery rests and the allegations are properly tested via motion practice and this Court's careful consideration.

### C.     Equities

The equities in this case strongly weigh against Plaintiff's belated request that this Court enter the proposed Order freezing unidentified bank and payment processor accounts purportedly tied to the Defendants, including accounts putatively held by Mr. Gens personally and "<u>anyone acting demonstrably in concert with them.</u>" (Emphasis added). As noted above, and attested to in Mr. Gens' Declaration, "the allegedly infringing videos complained of by the Plaintiff account for approximately 0.017% of the number of videos posted and displayed on the IM Websites since the lawsuit was filed." Gens. Decl., ¶ 69. Mr. Gens has confirmed under penalty of perjury that the files identified in the Complaint were disabled and quarantined upon notice and rendered inaccessible via the subject International Media websites. *Id.* at ¶ 57. Further, the inadvertent reactivation (posting) of a tiny fractional number of videos, which was corrected via removal and permanent quarantine of those materials upon notice, certainly does not tilt the balance of equities in this case to support the issuance of Plaintiff's proposed draconian Order – *i.e.* a proposed Order which does not request any relief concerning the purported copyright protected materials.

In sum, the proposed Order may be singularly characterized as Plaintiff's attempt to force the Defendants out of business. Indeed, the Supreme Court has expressed concerns over such sweeping and destructive asset freezes, calling such orders "the nuclear weapon of the law" (*Grupo Mexicano*, 527 U.S. at 329 (citations omitted)) and citing with approval commentary noting that such relief

"would manifestly be susceptible of the grossest abuse. A more powerful weapon of oppression could not be placed at the disposal of unscrupulous litigants." *Id.* at 330. Ultimately, the Supreme Court there concluded that, "[e]ven when sitting as a court in equity, we have no authority to craft a 'nuclear weapon' of the law like the one advocated here." *Id.* at 332.

In the present case, Plaintiff has undertaken no discovery on any issue and has not even asserted a *potential* damage figure that might conceivably relate to its overbroad and unenforceable proposed Order. Although International Media is an ISP for purposes of the DMCA and thus subject to the safe harbor provisions of Section 512 (Gens Decl., ¶¶ 58-64), the Court could accept Plaintiff's bold and unsubstantiated allegations as true and Plaintiff would still face the reality that equity does not support the issuance of the proposed Order. The alleged offending postings are inaccessible and will remain so pending the outcome of this litigation. Regardless, they account for a tiny fraction of the content posted by third-parties and previously available on International Media's websites. No indirect revenue could conceivably be flowing to Defendants or through the payment processors identified in the proposed Order as a result of the purported violative postings. Regardless, Plaintiff seeks the assistance of this Court in over-securing any claim it might conceivable have for legally available and adequate legal (financial) remedies.

### III.  CONCLUSION

Plaintiff's proposed Order is vague, grossly overbroad and not supported by the record in this matter, separate and apart from its abject unenforceability. The TRO Application represents evidence of Plaintiff's desire to avoid litigating its claims on the merits, which will necessarily require Plaintiff to take steps to begin discovery and prosecute this action. No exigent circumstances exist and money damages will be available to Plaintiff, assuming it decides to actively prosecute

D0089876-2/10410-001

these claims and test their merit before this Court following the completion of discovery.

For these reasons, the Defendants respectfully request this Court deny Plaintiff's TRO Application by Order, vacate the pending hearing and award Defendants all reasonable attorneys' fees and costs unnecessarily incurred in this wasteful endeavor.

**RESPECTFULLY SUBMITTED** this 12th day of September, 2013.

**Attorneys for Defendants**

By: /s/ John P. Flynn
John P. Flynn (# 015065)
Peter J. Moolenaar (# 024487)
DIOGUARDI FLYNN LLP

Evan Fray-Witzer (#564349)
CIAMPA FRAY-WITZER, LLP

Valentin D. Gurvits (# 643572)
Matthew Shayefar (# 685927)
BOSTON LAW GROUP, LLP

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of September, 2013, I transmitted the foregoing document to the Clerk of the United States District Court, District of Arizona, using the ECF System for filing and transmittal of a Notice of Electronic File to the following ECF registrants:

Chad L. Belville
Attorney at Law
4742 N. 24th Street, Suite 315
Phoenix, AZ  85016
cbelville@azbar.org
*Attorney for Plaintiff*

Spencer D. Freeman
Attorney at Law
1107 ½ Tacoma Avenue South
Tacoma, WA  98402
sfreeman@freemanlawfirm.org
*Attorney for Plaintiff*

1  I further certify that a COPY of the foregoing is being hand-delivered this date before 4:00 pm (AZ) to:

2  Honorable Susan R. Bolton
   U.S. District Court for the District
3  of Arizona
   401 W. Washington
4  Phoenix, AZ  85003

5   /s/ Megan Barber

D0089876-2/10410-001