Libby Banks
**The Law Office of Libby Banks**
State Bar No. 020767
11120 North Tatum Blvd., Suite 101
Phoenix, AZ 85028
Phone: 602-375-6752
Fax: 602-795-0072
Email: libbybanks@yahoo.com
**Attorney for Jason Tucker**

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Cybernet Entertainment LLC, a New York Company, | ) ) ) **No. CV 12-01101-PHX-SRB** ) |
| Plaintiff, | ) **RESPONSE OF JASON** ) **TUCKER TO MOTION TO** |
| v. | ) **COMPEL** ) ) ) |
| IG Media Inc. and International Media Ltd. dba YouJizz.com JizzHut.com and JizzOnline.com and OnlyJizz.com and MoviesGuy.com and JizzBo.com and HotFunHouse.com and Igor Gens and DOES 1-10 inclusive and DOE COMPANIES 1-100 inclusive | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Jason Tucker, non-party witness, files this response to the Motion to Compel filed by Defendants with regard to a Subpoena Duces Tecum issued to Jason Tucker.

1

The Subpoena is in blatant violation of Rule 45(d)(1), F.R.Civ.P. Under that Rule, a party or attorney issuing a subpoena "must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The burdensome and overreaching Subpoena in this case did just the opposite – it imposed a huge burden and great expense on Tucker because it sought "any and all" documents of any kind whether or not related to this litigation.

Further, the Subpoena was not truly issued to obtain production of documents and things. The true purpose of the Subpoena and the Motion to Compel was noted on page 4 of the Motion to Compel – Defendants are desperate to eliminate Tucker as an expert, and are really seeking a way to bar Tucker from providing further expert testimony. This purpose for the subpoena has been evident from the outset. Before even receiving the documents promised to them, Defendants' counsel had already started to prepare a Motion to Compel. After receiving the documents and things, Defendants' counsel complained about the production, even where it appeared that neither he nor his staff had actually reviewed what was produced. Instead, Defendants' counsel simply threatened that if the documents were not provided, Tucker "certainly will be in no position to sign another expert declaration in this matter."  (Exhibit A, Email from John Flynn).

Defendants not only issued an overbroad and overreaching Subpoena to a non-party, but now complain that Tucker's production of the huge quantity of

documents requested is a "data dump." If Defendants wanted specific documents, tailored to their need for discovery in this case, they should have tailored the Subpoena to get those documents. They did not do so, and it is clear that the reason for this is that Defendants really seek disqualification of Tucker as an expert, and not the actual documents.

Because the Subpoena Duces Tecum is overbroad, imposes an undue burden and expense on Tucker and was issued for an improper purpose, and because Tucker has produced documents in his possession regarding this litigation, the Court should deny the Motion to Compel and should award sanctions, expenses and attorney's fees to Jason Tucker.

## I.   STATEMENT OF FACTS

This action was filed against Defendants for copyright and trademark infringement of Plaintiff's adult entertainment intellectual property. Plaintiff has alleged that Defendants own and operate a "paysite program" which is a website devoted to the provision of stolen adult entertainment films to third parties in exchange for membership fees and/or advertising revenue.

Jason Tucker is an expert witness retained by Plaintiff. His company, Battleship Stance, LLC is a leading intellectual property management and anti-piracy enforcement company. He has been an expert in many cases involving infringement of adult entertainment films. (See Declaration of Jason Tucker in

Support of Plaintiff's Motion for Temporary Restraining Order, attached as Exhibit 1 to Defendants' Motion to Compel).

In this case, Tucker was retained to review and document or supervise the review and documentation of evidence of Defendants' infringement of Plaintiff's intellectual property. In performing these services, Tucker utilized personnel in an office in Iowa, as well doing work and using personnel in Arizona.

Tucker accumulated a huge volume of digital evidence in performing these services. They include videos from the websites run by Defendants, screen shots of how Defendants' websites work, DMCA letters, correspondence with Defendants' DMCA Agent and Attorney Larry Walters via emails, videos for each documented infringement, screen captures of sites, site infringements, and site information,  PDF documents of specific pages of sites and site information, spreadsheets of infringements, copies of all DMCA notices sent to parties via email and on paper and receipts from sending paper DMCA notices via Federal Express and U.S. Mail). As an example of the volume of material, at least 840 different infringing videos were found on Defendants' websites early in the case, and another 364 videos were discovered in July 2013, during pendency of the case. (See Declaration of Jason Tucker in Support of Plaintiff's Motion for Temporary Restraining Order, attached as Exhibit 1 to Defendants' Motion to Compel).

Defendants have sought no discovery whatsoever from Plaintiff in this case. Instead of seeking discovery from Plaintiff, they have done just one thing: subpoenaed Plaintiff's expert, Jason Tucker. While this Subpoena seeks information regarding this litigation, it also seeks an overabundance of materials that are clearly not germane to this action at all.

Despite the overreaching, overbroad and harassing nature of the Subpoena, Tucker endeavored to cooperate. While he lodged an objection, he did agree to produce documents relevant to the lawsuit, including the over 1,000 videos and various screenshots showing Defendants' infringement.

Initially, Tucker advised that he did not have possession of all the documents he agreed to produce, as many were on a computer in Iowa. In addition, he stated that the documents in his possession here would be provided on stick drives or CD's or DVD's. In addition, Tucker offered that if Defendants provided a hard drive, he would ship it to Iowa and obtain all of the documents on the computer there.

Defendants never responded with anything indicating they actually wanted to obtain the documents. (Instead, they were simply moving forward with the Motion to Compel, the whole purpose of which was to request that Tucker be barred from testifying). Defendants ignored the suggestion that Tucker would

provide all the documents if they provided a hard drive on which to place the documents.  Exhibit A, Email correspondence from John Flynn.

After realizing that even the materials in Arizona were too voluminous to put on Stick Drives or CD's, Tucker decided to put all of the information from both Iowa and Arizona on a hard drive with the information and provide it to Defendants. He arranged for all of the documents in Iowa and in Arizona to be placed on the hard drive, then delivered the hard drive to Defendants' counsel's office.[1] Tucker advised through counsel that these documents were produced as kept in the ordinary course of business.  Despite these extraordinary efforts to comply with the Subpoena, Defendants have filed a Motion to Compel. It is part of the further abuse of discovery and harassment of Jason Tucker.

## II.   LEGAL ARGUMENT

### A.   THE DOCUMENTS PRODUCED WERE PRODUCED AS KEPT IN THE ORDINARY COURSE OF BUSINESS

Defendants assert that the documents are not produced as kept in the ordinary course of business. In particular, Defendants assert that the undersigned represented that the documents were kept on DVD's or stick drives in Arizona. This is completely false. It is also belied by Defendants' own Exhibit 7. The email attached to the Motion to Compel states clearly "in order to produce the documents, Jason Tucker will providing you with a DVD or stick drive with the

---

[1] Defendants' counsel's office agreed to return the hard drive, but have failed to do so.

PDF or JPEG documents."  (Motion to Compel, Exhibit 7). Neither Tucker nor his counsel ever represented that the documents were kept on DVD's and stick drives. Instead, the DVD's or stick drives were the means of transferring files from Jason Tucker's computer to Defendants. Unless Defendants' counsel are completely unschooled in computer use, they certainly know this, and their claims that the undersigned made misrepresentations are intentionally false.

　　　　As the Declaration of Jason Tucker re: Motion to Compel states, the documents produced were from the computers/servers on which they were maintained in Arizona and Iowa. The documents were organized, transferred, presented and delivered by directory, folder, and file structure exactly as maintained on those computers and servers located in Iowa and in Arizona. There is no difference between how the material is held by Tucker and how it is now held by Defendants, except that Defendants have everything on one hard drive. (Exhibit B, Declaration of Jason Tucker re Motion to Compel). Tucker has done everything to produce the documents requested in the same way they were held by him.

　　　　Rule 45(e), F.R.Civ.P. provides that when producing electronically stored information, **"**If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms." By producing documents by way of a hard drive, Tucker produced the documents

(which were stored in the same format on a hard drive on computers, or in the same format on servers) in the form in which they are ordinarily maintained and in a reasonably usable form. That is all that is required of him.

**B.    THE SUBPOENA IS OVERBROAD AND UNDULY BURDENSOME AND SEEKS INFORMATION NOT REASONABLY LIKELY TO LEAD TO RELEVANT EVIDENCE**

The Subpoena is incredible in its overbreadth, clearly abuses the discovery process and is intended to harass Jason Tucker. The Court should deny the Motion to Compel.

As stated, Defendants complain of a "data dump" by Tucker. It is impossible to respond to these overreaching requests without producing huge amounts of material. The requests include Request No. 15: "From January 1, 2010 to the present, any and all Documents exchanged by and between You and any other entity or individual concerning or regarding the Litigation, Cybernet, Igor Gens, IG Media, Inc., and/or International Media, Inc." All of those documents have been produced.[2]

The requests also  include Request No. 19: "Any and all Documents related to, relied upon or supporting the testimony You provided under penalty of perjury in the Litigation as set forth in your Declaration." They include Request No. 20: "Any and all Documents related to Your infringement investigation services (as

---

[2] Tucker's response does not note that he has produced all documents responsive to this request, but the documents produced are all he has responsive to that request.

referenced in Paragraph 25 of the Declaration) related to Cybernet, Igor Gens, IG Media, Inc., and/or International Media, Ltd."

As Tucker stated in his response to these requests, the "Documents responsive to this include over 2,297 videos consisting of 1.96 TB of space, over 4,584 .pdf, .jpeg, and excel and word documents." Tucker produced these documents – exactly what Defendants asked for – and Defendants have no grounds to complain now that it is too much information.

The Subpoena also includes global requests for all documents Tucker exchanged with non-parties on any subject whatsoever during a now three year period. The requests include the following:

"From January 1, 2010 to the present, a copy of **any and all** documents exchanged by and between You [Tucker] and [non-parties] Private Media Group, Fraserside Holdings, and/ or Fraserside IP, LLC." There is no limitation regarding subject matter of these documents. (*See* Subpoena Duces Tecum, Request No. 2). The same global request for any document whatsoever was made as to non-parties Wicked Pictures (Request No. 3), Channel One Communications (Request No. 4), Zero Tolerance Entertainment (Request No. 5), Third Degree Films (Request No. 6), and Black Ice Limited (Request No. 7). Defendants do not bother to enlighten Tucker or this Court with any explanation of why this type of information is at all relevant to the litigation at hand. They simply demand the documents.

Next, Defendants seek documents that are corporate formation and operational documents for Tucker's unrelated entities– entities which are not parties and are not involved in any way in this litigation.  (Request No. 8). Again, Defendants fail to state what relevance this might have to the issues in the litigation before this Court.

Defendants seek information about people employed **by** Tucker in Request No. 9, but seem confused about what they actually asked for, since the Motion to Compel states that it is seeking documents "relating to Tucker's employment…as an alleged expert." In either case, the global request for "all documents" regarding employment of individuals by Tucker or documents regarding Tucker's employment are simply not relevant, and Defendants make no effort to state why these documents are relevant.

Defendants seek lists of members, directors, sponsors and contributors to the PAK Group. (Request No. 11). In support of this request, Defendants reference Tucker's work as an expert, but do not say why the PAK Group is relevant to this or to the litigation (in fact, they do not even attempt to enlighten the court with an indication of what PAK Group is or does!). This is clearly beyond the scope of discovery for this case.

Next, Defendants seek all documents exchanged by Tucker with Mark Randaza, an attorney who has represented Jason Tucker, and has also represented

Plaintiff. Again, Defendants fail completely to state why this is relevant. Further, Tucker claims attorney-client privilege as to any such documents.

Defendants also seek a global release of all documents exchanged with "any other entity or individual" concerning the litigation. Again, this is a fishing expedition that is unwarranted against a party, and even more unwarranted as against a non-party witness. The fishing expedition continues with requests for "any and all" documents related to Tucker's service as an expert in other cases, including cases in which neither of the parties here is involved (Request 21), and, inexplicably, documents related to Tucker's efforts to purchase adult industry websites, including from non-parties to this action.  (Requests 23, 24).

Here, the request for "any and all" documents for other clients, other cases, and for Tucker's other endeavors is more than a "fishing expedition," and is, as one court described it, an effort to "drain the pond and collect the fish from the bottom." *In re IBM Peripheral EDP Devices Anti–Trust Litigation*, 77 F.R.D. 39, 41–42 (N.D.Cal.1977); *Amcast Indus. Corp. v. Detrex Corp.*, 138 F.R.D. 115, 121 (N.D. Ind. 1991). The Court should deny the Motion to Compel and require Defendants to seek discovery from Plaintiff tailored to this litigation.

In addition, even where a party wishes to subpoena relevant documents, Rule 45 constrains what a party can demand from non-parties. There is an obligation to avoid imposing an undue burden on the witness, and the court must

enforce this duty by quashing the subpoena or awarding monetary sanctions, or both. *Mattel, Inc. v. Walking Mountain Productions,* 353 F.3d 792, 814 (9th Cir.2003).

*Mattel, Inc. v. Walking Mountain Productions*, was also a copyright and trade infringement case. There, Mattel subpoenaed documents from the employer of the expert for the Defendant (Dr. Nickel). While some of the information Mattel sought were documents relating to the litigation and Dr. Nickel's expert report and testimony, Mattel also sought information from Dr. Nickel's employer, including its policies and procedures with regard to "the third-party copying, reproduction, or photographing" of works in which the employer had a proprietary interest. The district court found the Subpoena not just "very broad," but indeed, "abusively drawn." The court found that "[n]o attempt had been made to try to tailor the information request to the immediate needs of the case." *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d at 813. The district court found that the subpoenas were served with an ulterior motive – to have the expert's employer exert pressure on the experts not to testify. This was an improper purpose for serving a subpoena, and warranted sanctions and quashing of the subpoena. *Id.*

Here, Defendants have revealed their true and improper purpose for serving this subpoena and moving to compel production – they want to bar Tucker from testifying. The Court should deny the Motion to Compel.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

### C.   THE COURT SHOULD AWARD ATTORNEY'S FEES AND SANCTIONS

In *Legal Voice v. Stormans Inc.*, -- F.3d --,  2013 WL 6851118 (9th Cir. 2013), the Ninth Circuit held that Rule 45(d)(2)(B)(ii) *requires* the district court to shift a non-party's costs of compliance with a subpoena to the party seeking the documents if those costs are significant. The only question the court considers is whether the subpoena imposes significant expense on the non-party. If so, the district court must order the party seeking discovery to bear at least enough of the cost of compliance to render the remainder "non-significant." *Id.*, citing *Linder v. Calero–Portocarrero,* 251 F.3d 178, 182 (D.C. Cir. 2001).

Here, the time and expense of responding to the overbroad Subpoena were indeed significant. The attached invoice from Jason Tucker demonstrates that it took over 60 hours of Tucker's time to review the Subpoena with counsel, respond and gather the documents produced. His attorney's fees, listed on the invoice at $1,500, are well in excess of that amount. (Exhibit C, Invoice). This is significant time and expense, and under Rule 45, Defendants should bear the costs.  *Legal Voice v. Stormans Inc.*, *supra*.

The failure to narrowly tailor a subpoena may also be a ground for sanctions under subsection (d)(1) of Rule 45. In addition, the issuance of a subpoena in bad faith or for an improper purpose is grounds for an award of sanctions. *Mattel*, 353 F.3d at 814.

13

The Subpoena here is oppressive, harassing, overbroad and abusive. Despite this, Tucker made every effort to respond with items relevant to this litigation. The Court should award Tucker expenses for his time in gathering the information and producing it, and should award him attorney's fees for objecting to the Subpoena and for responding to the Motion to Compel.

Respectfully submitted this 22nd day of January, 2014.

By:/s/ Libby Banks

Libby Banks, Attorney at Law
**The Law Office of Libby Banks**
State Bar No. 020767
11120 North Tatum Blvd., Suite 101
Phoenix, AZ 85028
Phone: 602-375-6752
Fax: 602-795-0072
Email: libbybanks@yahoo.com

**ATTORNEY FOR JASON TUCKER**

14

# CERTIFICATE OF SERVICE

I, Libby Banks, do hereby certify that on this 22nd day of January, 2014, I served the Response of Jason Tucker to Motion to Compel on:

John P. Flynn
Dioguardi Flynn LLP
7001 N. Scottsdale Road, Suite 2060
Scottsdale, AZ 85253

Chad L. Belville
4742 N. 24th Street Suite 315
Phoenix, AZ 85016

Spencer D. Freeman
1107 ½ Tacoma Ave. South
Tacoma, WA 98402


/s/ Libby Banks