**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Cybernet Entertainment, LLC,<br><br>Plaintiff,<br><br>v.<br><br>IG Media Inc. et al.,<br><br>Defendants. | No. CV-12-01101-PHX-SRB<br><br>**ORDER** |

The Court now considers Defendants' Motion to Compel Production ("MTC") (Doc. 98).

**I. BACKGROUND**

This case arises from several copyright and trademark infringement claims brought by Cybernet concerning its adult entertainment catalogue, the facts of which have been summarized in a previous Order. (*See* Doc. 1, Compl. ¶¶ 83-544; Doc. 32, Nov. 30, 2012 Order at 1-4.) Defendants have moved to compel non-party Jason Tucker "to produce or otherwise make available documents and information requested" through a subpoena. (MTC at 1.)

**II. LEGAL STANDARDS AND ANALYSIS**

Federal Rule of Civil Procedure 34(c) grants parties the ability to seek the production of documents and other tangible things via a subpoena issued in accordance with Rule 45. The scope of discovery permitted under Rule 45 is the same as under Rule 26(b). Fed. R. Civ. P. 45 advisory committee's note to 1970 amendment. A subpoena

may therefore request the production of "any nonprivileged matter that is relevant to any party's claim or defense." *See* Fed. R. Civ. P. 26(b). After a written objection has been made, the party serving the subpoena may not have access to the requested documents absent a court order, but may at any time move for an order to compel document production. Fed. R. Civ. P. 45(d)(2)(B). The Court has broad discretion to compel or deny discovery. *See Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003).

### A. The Subpoena and Mr. Tucker's Objections

Mr. Tucker is an expert witness retained by Cybernet to review and document evidence purportedly establishing Defendants' infringement of Cybernet's intellectual property. (Doc. 101, Resp. of Jason Tucker to MTC ("Resp.") at 3-4.) He is a director of Battleship Stance, LLC, an intellectual property management and antipiracy enforcement company, and currently serves as a consultant and enforcement officer for adult entertainment studios including Cybernet. (Doc. 98-1, Decl. of Jason Tucker in Supp. of Pl.'s Mot. for TRO ¶ 2.) On October 2, 2013, Defendants served Mr. Tucker with a subpoena containing the following document requests based on information included in his declaration filed as part of Cybernet's September 3, 2013 application for a temporary restraining order:

> 1. From January 1, 2010 to the present, a copy of any and all Documents exchanged by and between You and Cybernet.[1]
>
> 2-7. From January 1, 2010 to the present, a copy of any and all Documents exchanged by and between You and Private Media Group, Fraserside Holdings, . . . Fraserside IP, LLC, [Wicked Pictures, Channel One Communications, Zero Tolerance Entertainment, Third Degree Films, and/or Black Ice Limited].

---

[1] The subpoena requested "[a]ll chat logs, including but not limited to Skype, ICQ, AIM, or other internet chat mediums; [c]ontracts, agreements, or confirmation of services; [s]tatements and/or invoices for services billed, rendered or proposed; [e]vidence of all payments made or received; [and] [a]ll emails, letters, or other communications." (Doc. 98-2, Objection and Resp. of Jason Tucker to Subpoena to Produc. Docs. ("Tucker Objections.") at 2-3.). Requests 2-7 sought the production of the same types of documents. (*Id.* at 3-7.)

8. Copies of all partnership, limited liability, corporate or other legal entity formational documents for any entity related to the adult industry or adult erotic entertainment in which you have held or continue to maintain any direct or indirect ownership interest in or right to profits and/or commissions from January 1, 2010 to the present.

9. Copies of all Documents evidencing or in way [sic] reflecting the hiring, retention or engagement by You of any entity or individual as an employee, agent, representative or contractor from January 1, 2010 to the present.

…

11. All lists of members, directors, sponsors, and contributors to The PAK Group.

…

14. From January 1, 2010 to the present, any and all Documents exchanged between You and Mark Randazza concerning or regarding the Litigation, Cybernet, Igor Gens, IG Media, Inc., and/or International Media, Inc.

15. From January 1, 2010 to the present, any and all Documents exchanged by and between You and any other entity or individual concerning the Litigation, Cybernet, Igor Gens, IG Media, Inc., and/or International Media, Inc.

…

21. Any and all Documents related to Your services related to *Fraserside v. Dr. Tuber*, Case No. 12-cv-60931 (as referenced in Paragraph 51 of the Declaration).

…

23. Any and all Documents relating to or reflecting your attempts or offers to purchase websites from Dr. Tuber and/or Igor Kovalchuk.

24. Documents relating to or reflecting your attempts or offers to purchase any other adult industry or adult erotic entertainment tube websites.

(Tucker Objections at 2-13.)

On October 14, 2013, Mr. Tucker objected to these requests on a number of grounds, including that they were overbroad, not relevant to the issues in the case, and would disclose trade secrets and confidential research as well as information protected by the attorney-client privilege and work-product protections. (*See* Tucker Objections at 2-13.) Shortly thereafter, Defendants requested the production of all responsive nonprivileged documents as well as a privilege log so that their counsel could "evaluate the scope and propriety of Tucker's objections and proffered justification[s]" for limiting its production of documents. (MTC at 2.) Since then, Mr. Tucker has provided a hard drive containing "over 1,000 videos and various screenshots" related to the services he provided to Cybernet, files totaling approximately 1.5 terabytes of data. (*See* MTC at 4; Doc. 101, Resp. of Jason Tucker to MTC ("Resp.") at 6-7.)[2] Mr. Tucker has not provided a privilege log to Defendants. (*See* MTC at 4.)

### B. Production of Evidence

Defendants move to compel the production of all documents or information responsive to the requests listed above, beyond what Mr. Tucker has already provided

---

[2] Defendants suggest that "the documents on the hard drive could not have been produced as kept in the normal course of business . . . since [counsel for Mr. Tucker] previously identified two separate sources for responsive documents: (1) dvd or stick drive in Arizona, and (2) video files in Iowa." (MTC at 3-4.) Mr. Tucker explains that a "dvd or stick drive" was only intended to serve as the medium by which responsive files accessible by Mr. Tucker (on computers and servers in Arizona and Iowa) would be produced for Defendants. (Resp. at 7.) Due to the size of the files, Mr. Tucker placed all the information on a hard drive instead. (*Id.* at 6.)

There is nothing in the record indicating that this electronically stored information was not produced "in a form . . . in which it [was] ordinarily maintained" as it appears that Mr. Tucker copied the files onto the hard drive, which presumably maintained the file structure and file names as they existed on the computers or servers. *See* Fed. R. Civ. P. 34(b)(2)(E)(ii). Because of the broad language in Defendants' requests (and the overlap of the requests), it is also unclear how Mr. Tucker could have better "organize[d] and label[led] [the files] to correspond to the categories in the request." *See* Fed. R. Civ. P. 34(b)(2)(E)(i).

- 4 -

1  them. (*Id.* at 4.) The Court agrees with Mr. Tucker that the majority of these requests seek
2  evidence that is not tailored to elicit relevant information that will either be admissible at
3  trial or is reasonably likely to lead to the discovery of admissible evidence. Requests 2-9,
4  11, 21, 23-24 seek the production of evidence related to Mr. Tucker's consultation with
5  other nonparties, the operation of companies he owns or is affiliated with, and some of
6  his prior business dealings. Defendants offer no explanation for why such evidence is
7  relevant to whether Defendants infringed on Cybernet's intellectual property. *See Moon*
8  *v. SCP Pool Corp.*, 232 F.R.D. 633, 638 (C.D. Cal. 2005) (quashing discovery requests in
9  a subpoena that sought documents related to a non-party's business relationship with
10 other nonparties).

11 Requests 1 and 15 more appropriately seek the production of evidence tied to the
12 litigation and the parties involved in it. However, courts must limit discovery requests
13 that seek information that "can be obtained from some other source that is more
14 convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). These
15 requests seek documents that were exchanged between Mr. Tucker and the parties in this
16 litigation. Defendants have not explained why they seek this information from a non-
17 party rather than Cybernet or their own records. *See Moon*, 232 F.R.D. at 638 ("[T]hese
18 requests all pertain to defendant, who is a party, and, thus, plaintiffs can more easily and
19 inexpensively obtain the documents from defendant, rather than from nonparty KSA.").
20 There is no indication that Defendants attempted and failed to discover relevant evidence
21 from these other sources before requesting them from Mr. Tucker.[3] In any event, Mr.
22 Tucker has stated that he has provided all documents responsive to Request 15, which
23 overlaps with Request 1.

24 Request 14 seeks the production of documents between Mr. Tucker and attorney
25 Mark Randazza, who has represented Mr. Tucker and Cybernet in other matters. (Tucker
26 Objections at 10-11.) Mr. Tucker objected to this request, contending that it was

---

28 [3] Mr. Tucker states that Defendants have not sought discovery from Cybernet. (Resp. at 5.)

overbroad and burdensome and sought evidence subject to the attorney-client privilege and work-product protection. (*Id.* at 11.) The Court agrees that this request is overbroad to the extent that it seeks evidence that is not related to the litigation here. Although it is not entirely clear how Mr. Randazza would have any relevant evidence to this lawsuit since his representation concerned other matters, Mr. Tucker should produce a privilege log for any responsive evidence that "provide[s] sufficient information to enable [Defendants] to evaluate the applicability of the claimed privilege or protection." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court for Dist. of Mont.*, 408 F.3d 1142, 1148 (9th Cir. 2005) (citing Fed. R. Civ. P. 26(b)(5) advisory committee's note to 1993 amendment). Because of the expansive nature of this request, Mr. Tucker has not waived the attorney-client privilege or work-product protections by failing to provide a privilege log after being served with the subpoena. *See id.* at 1149 (noting that the court must consider the magnitude of the discovery in the case and any other circumstances that would complicate discovery in deciding whether privilege has been waived).

### C. Sanctions and Attorneys' Fees and Costs

Defendants and Mr. Tucker have requested that the Court impose sanctions. (MTC at 4 (requesting sanctions, including attorneys' fees and costs, but not framing that request under a specific rule); Resp. at 13 (requesting sanctions under Rule 45(d)(1) but not specifying what sanctions should be imposed).) The Court finds that sanctions are not appropriate here under any provision of the Federal Rules as there is nothing in the record to suggest misconduct or other sanctionable conduct. *See Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012) (considering a party's bad faith in whether to impose sanctions). Mr. Tucker's request for attorneys' fees and related costs is premature since he may incur additional compliance costs in determining whether there are responsive documents to Request 14 and, if so, to produce a privilege log. *See Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) ("Rule 45(d)(2)(B)(ii) requires the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant.").

### III. CONCLUSION

The Court denies the Motion as to Requests 2-9, 11, 21, 23-24 because Defendants do not seek evidence that is relevant to the lawsuit here. The Court denies the Motion for Requests 1 and 15 because any additional evidence beyond what Mr. Tucker has provided that is responsive to these requests should be available from the parties themselves. For any responsive evidence to Request 14, Mr. Tucker should provide Defendants with a privilege log that allows them to evaluate the applicability of the privileges asserted.

**IT IS ORDERED** granting in part and denying in part Defendants' Motion to Compel Production (Doc. 98).

Dated this 20th day of March, 2014.

_____
Susan R. Bolton
United States District Judge