Chad L. Belville, AZ Bar 020771
Attorney for Plaintiff Cybernet Entertainment.
4742 N. 24th Street, Suite 315
Phoenix, AZ 85016
Telephone: (602) 904-5485
Facsimile:  (602) 291-6953
Email: cbelville@azbar.org

Spencer D. Freeman, WSBA#25069
Attorney for Plaintiff Cybernet Entertainment.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone: (253) 383-4500
Facsimile:  (253) 383-4501
Email: sfreeman@freemanlawfirm.org
(Pro Hac Vice)

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

| | |
|---|---|
| CYBERNET ENTERTAINMENT, LLC, a New York Company,<br><br>    Plaintiff,<br><br>vs.<br><br>IG MEDIA INC., et al.,<br><br>    Defendants. | **Case No.:  2:12-cv-01101 SPL**<br><br>**PLAINTIFF'S STATEMENT OF FACTS IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT** |

Pursuant Fed.R.Civ.P. 56, and 17 U.S.C. §502, Plaintiff Cybernet Entertainment LLC ("Cybernet") moves this Court for Partial Summary Judgment, finding that Defendants IG Media, Inc., International Media, Ltd, and Igor Gens, and their agents are liable for violating Cybernet's copyrights for affirmatively and admittedly posting 115 separate and distinct

- 1

copyrights works.

## I. INTRODUCTION

Regardless of the instant lawsuit and over 400 DMCA take-down notices, Defendants continued to infringe Cybernet's copyrights and trademarks throughout this litigation while attempting to hide behind the safe harbor provisions of the Digital Millennium Copyright Act. However, regardless of whether an Internet site is deemed an Internet Service Provider, and whether the site adhered to requisites specific to safe harbor protects, a site's owner and its management are not afforded protections for copyrights violated by the owner's and managements own direct actions. Defendants have admitted that, while this litigation has been pending, they posted of 21 of Cybernet's copyrighted videos on seven (7) of their separate and distinct websites such that Cybernet's videos were displayed without license or authority on 115 separate and distinct URLs. Each of these videos – and the URLS which they were posted - were the subject of take-down notices delivered to Defendants' DMCA agent in December 2012. While Defendants downplay their unlawful postings as "accidental," their stated intent in posting is not relevant to liability. Moreover, given the popularity of the Defendants sites, the free viewing of Cybernet's videos has significant impact.

## II. FACTUAL BACKGROUND

### A. Plaintiff's Business and Copyrighted Works

Cybernet Entertainment LLC (Cybernet) is the global leader in the production of legal, high quality, authentic adult fetish motion pictures. *Plaintiff's Statement of Material Facts In Support of Partial Summary Judgment ("SOF")* 1. Cybernet is unlike any other adult oriented company in the industry due to the unique nature of its work. At its core, the company's mission is to demystify and celebrate alternative sexualities by providing the most authentic kinky experiences. In order to maintain its stature and purpose, Cybernet is extremely protective of how the company and its works are presented to fans and to the public. Cybernet is also

protective of how its business relationships reflect on and present the company and its products. *SOF 2-3.*.

Cybernet is the producer, distributor, and exclusive licensor of its own motion pictures in the United States. *SOF 4.* Cybernet is engaged in the business of producing, distributing, and/or licensing to others, the rights to copy, distribute, transmit and exhibit copyrighted motion pictures and/or other audio visual works. *SOF* 5. Cybernet expends significant amounts of time, money and other resources to produce high quality products, develop supply chains and distribution systems, and build premium brand recognition of their products. *SOF 6_.* Cybernet, either directly or through its affiliates or licensees, distributes its copyrighted works in various forms over the Internet, pay-per-view, video on demand, download, and digital video discs (DVD's) by selling them directly to the home viewing market or licensing others to do so. *SOF* 7.

Cybernet's highly sought after intellectual property is distributed on a wide range of platforms around the globe, including pay-per-view satellite television, internet and mobile devices. *SOF 8.* Cybernet has registered with the United States Copyright Office its copyrighted works. Industry standard steps were and are taken to mark and identify Cybernet's products, including placing recorded warnings at the beginning and end of video productions that appear whenever those videos are played. *SOF 9-10.* The videos are watermarked with *Cybernet's* readily identifiable logos, such as the red stylized "K" on a black background, and many begin with a very recognizable opening scene of the famous Armory where the company is located. *SOF 10.*

Websites that infringe Cybernets' copyrights and trademarks and provide free access to Cybernet videos are in direct competition with Cybernet's web properties. *SOF* 11. Further, the free access to the videos reduces the value of Cybernet products and licensing agreements, and causes significant confusion through their representation of the trademarks. *SOF 12.* In addition to Cybernet's own websites, Cybernet licenses, for a fee, its videos to major satellite provides

around the world for display on paid satellite television stations – available to users that pay for access. *SOF 13*. With Cybernet videos available for free on infringing websites, users are less likely to pay membership at websites licensed to display the videos or pay satellite television services for such access. Accordingly, the value of Cybernet's licenses is *significantly* reduced with the availability of the videos for free on infringing sites. The infringement of Cybernet's copyright and trademark through the public display of its videos for free has a significant impact on Cybernet's business, reputation, brand, and its counterproductive to all that the company does and presents. *SOF* 14-15.

      **B.**    **Defendant's Websites and Infringement of Cybernet's Intellectual Property.**

Defendant Igor Gens owns and operates two companies, International Media Ltd. and IG Media Inc. Mr. Gens and his companies own and operate the Internet websites YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, JizzBo.com, HotFunHouse.com, and MoviesGuy.com, each displaying free lengthy adult videos. *SOF 16*-17.

In addition to displaying videos, Defendants' web sites allow third parties to take videos located on Defendants' sites to display to other third parties on other third party websites for the purpose of driving traffic back to Defendants. Defendants have enabled this feature by providing an "embed code" for every video on its site. An internet user can copy and paste the embed code on another website where the video can then be viewed. *SOF* 18.

Concerned about infringement of its copyrights and trademarks, Cybernet retained the services of an infringement investigation service to search out Internet infringements. In March 2012, a search of Defendant's website revealed 840 separate instances of infringement of Cybernet's intellectual property. *SOF* 19-20. The original complaint in the instant matter, filed in May 2012, asserted 420 of these separately documented instances of violating Cybernet's registered copyrights and trademarks.

Shortly after the instant lawsuit was filed, it appeared that the Defendants removed the infringing videos from their websites. However, in the fall of 2012, these videos were once

again displayed on Defendants' websites. Accordingly, in December 2012, Cybernet sent Defendants' DMCA Registered Agent 840 DMCA compliant take-down notices – one for each of the infringing videos discovered on each of Defendants' websites. *SOF* 21-22.

Subsequent to the service of the DMCA take-down notices in December 2012, it was believed, and represented by Defendants, that Defendants had once again removed Cybernet's copyrighted videos and trademarks from the infringing web sites. Cybernet's January 2013 review of Defendants' web sites indicated that these infringements were taken down. *SOF* 23.

However, in July 2013, it was discovered once again that Cybernet's copyrighted works were displayed on the Defendants cites without authority – on the exact same URLs as when previously displayed. 115 of Cybernet's videos - videos listed in the original complaint ***and*** subject to the December 2012 take-down notices - were discovered once again on Defendant's web sites. Each of these videos were and are located in the exact same URL as they were when originally discovered, as listed in the complaint, and listed in the take-down notices. *SOF* 24.

Defendants have admitted to posting the 115 videos, albeit accidentally. *SOF* 25. At least 60 of these videos are subject to Cybernet's registered copyrights. *SOF* 26. In addition, each of these videos were posted on the Defendants' web sites with embedded code, which enable the viewer to display that same video on countless websites over the Internet. It cannot be actually known the number of places each video was posted, or the number of public viewers for those postings.

### III.     ARGUMENT

The "plain language of Rule 56(c)[1] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which

---

[1] Providing, "The court shall grant summary judgment if the movant shows that there is no genuine dispute of any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).

- 5 -

1 that party will bear the burden of proof at trial." *Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct.
2 2572 (2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548 (1986)). A
3 main purpose of summary judgment is to dispose of factually unsupported claims and defenses.
4 *Celotex*, 477 U.S. at 323-24. In considering a motion for summary judgment, the court must
5 draw all reasonable inferences in favor of the nonmoving party, but only where there is a
6 "genuine" dispute as to those facts. *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769
7 (2007).

When the moving party has carried its burden under Rule 5 6(c), its opponent must do more than simply show that there is some "metaphysical doubt" as to the material facts. *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348 (1986)). In other words, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247- 48, 106 S. Ct. 2505 (1986)). When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment. *Scott*, 550 U.S. at 380.

Plaintiffs must satisfy two requirements in order to establish direct copyright infringement: (1) show ownership of the infringed material; and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106. 17 U.S.C. § 501(a); *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1149 (9th Cir. 2007); *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001); *Baxter v. MCA, Inc.,* 812 F.2d 421, 423 (9th Cir. 1987); *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir 1989). Direct infringement does not require intent or any particular state of mind. *Religious Tech. Ctr. V. Netcom On-Line Commc'n Servs.,* 907 F.Supp. 1361, 1367 (N.D. Cal. 1995).

1  Copyright Registration for work creates rebuttable presumption that plaintiff's copyright
2  in the work is valid. 17 U.S.C. § 410(c); *Entertainment Research Group, Inc. v. Genesis*
3  *Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1007), *cert denied,* 523 U.S. 1021, 118 S.Ct.
4  1302, 140 L.Ed.2d 468 (1998).
5  A website, even one claiming to be a service provider, infringes upon a copyright holder's
6  exclusive right to display its works when the website stores copies of the infringing material and
7  communicates copies of the material to users. *Perfect 10 v. Amazon,* 508 F.3d at 1160.
8  In the instant matter, it is undisputed that Cybernet holds the exclusive copyright to each
9  of the 420 videos stated in the complaint, including the videos that have been discovered to have
10  been re-posted.
11  Defendants claim to be an Internet Service Provider (ISP) pursuant to the Digital
12  Millennium Copyright Act (DMCA) and afforded the safe harbor protections provided therein.
13  These safe harbor provisions shield a service provider from financial liability for infringing
14  activity on its network. 17 U.S.C. § 512(c).
15  To enjoy the § 512(c) safe harbor an ISP must show that it (1) does not have actual
16  knowledge that the material or an activity using the material on the system or network is
17  infringing, and (2) is not aware of facts or circumstances from which infringing activity is
18  apparent. If a service provider does obtain either actual or apparent knowledge, it may still
19  invoke the § 512(c) safe harbor only if it acts expeditiously to remove or disable access to the
20  infringing material. *Corbin v. Amazon.com, Inc.,* 351 F.Supp. 1090, 1099 (W.D. Wash 2004).
21  The notice of infringement from a copyright holder constitutes evidence of an ISP's
22  knowledge. *See, e.g., Ellison v. Robertson*, 357 F.3d 1072, (9th Cir. 2004) (DMCA compliant
23  notice sent to service provider); *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 620-21
24  (4th Cir 2001) (pre-suit letter substantially complying with DMCA sent to service provider);
25  *Hendrickson v. Amazon.com, Inc.,* 298 F. Supp.2d 914, 915 (Cent. Dist. CA 2003) (plaintiff
26  attempted to notify service provider); *Hendrickson v. eBay, Inc.*, 165 F. Supp.2d 1082, 1084-85

1  (Cent. Dist. CA 2001) (non-DMCA-compliant cease and desist letters sent); *CoStar Group, Inc.*
2  *v. Loopnet, Inc.*, 164 F. Supp.2d 688, 703 (Dist. MY 2001) (plaintiff sent DMCA notification of
3  claimed infringement).
4      The DMCA "safe harbors provide protection from liability for: (1) transitory digital
5  network communications; (2) system caching; (3) information residing on systems or networks at
6  the direction of users; and (4) information location tools." *Ellison*, 357 F.3d at 1076-1077 (citing
7  17 U.S.C. §§ 512(a)-(d) ).
8      The § 512(c) safe harbor protects a service provider from liability for "infringement of
9  copyright by reason of the storage at the direction of a user of material that resides on a system
10 or network controlled or operated by or for the service provider." To qualify for the § 512(c) safe
11 harbor, a service provider must show that: (1) it has neither actual knowledge that its system
12 contains infringing materials nor an awareness of facts or circumstances from which
13 infringement is apparent, or it has expeditiously removed or disabled access to infringing
14 material upon obtaining actual knowledge of infringement; (2) it receives no financial benefit
15 directly attributable to infringing activity; and (3) it responded expeditiously to remove or
16 disable access to material claimed to be infringing after receiving from the copyright holder a
17 notification conforming with requirements of § 512(c)(3). *ALS Scan, Inc. v. RemarQ*
18 *Communities, Inc.*, 239 F.3d 619, 623 (4th Cir. 2001) (citing 17 U.S.C. § 512(c)(1)).
19     DMCA immunity is not presumptive. Rather, it is granted only to "innocent" service
20 providers who can prove that they do not have actual or constructive knowledge of the
21 infringement. *ALS,* 239 F.3d at 625.
22     Excluded from § 512(c) protection is material that resides on the system or network
23 operated by or for the service provider through its own acts or decisions and not at the direction
24 of a user. *Io Group v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1146 (No. Dist. CA 2008)..
25     In May 2012, a complaint was filed specifically listing 420 infringements. The infringing
26 material was taken down, only to be re-posted. In December 2012, take-down notices were sent

to the Defendant's DCMA Agent. It was believed shortly thereafter that the infringing material was taken down only to be put back up. At least 115 of the infringing videos on each of their seven websites were reposted and located in the exact same URL as they were when the Defendants were noticed to take them down. Plain and simple, they were never removed and access to them was not disabled.

The fact that Defendants posted and displayed the 115 videos by their own admission and hand in the exact URL location negates any safe harbor protection arguably asserted by Defendants. Sixty of these videos are submitted herewith with proof of copyright registration and proof of posting in July 2013. Defendants' actions are problematic for two reasons. First, Defendants had actual knowledge that the videos they posted were infringing, as each as the subject of a DMCA compliant take down notice in December 2012. Second, *Defendants themselves posted and displayed the videos.* They were not displayed at the hands of third party user, but at the hands of the Defendants.

With regard to the videos posted by Defendants, discovered by Cybernet in July 2013, there is no material issue of fact. Defendants violated Cybernet's copyrights and Defendants cannot hide behind DMCA safe harbor provisions.

## IV. CONCLUSION

Defendants have illegally displayed and distributed unauthorized copies of Cybernet's copyrighted works. Specific to the videos posted by Defendant, discovered by Cybernet in July 2013, there is no material issue of fact. Defendants have violated Cybernet's copyrights. It is therefore respectfully requested that summary judgment be entered specific to these videos.

\\\

\\

\

Dated August 13, 2014.

        Respectfully submitted,

        __/s/ Spencer D. Freeman_____
        Spencer D. Freeman
        Freeman Law Firm, Inc.
        Attorney for Plaintiff Cybernet Entertainment LLC

# CERTIFICATE OF SERVICE

I, Spencer D. Freeman, do hereby certify that on the 13th day of August 2014, I caused true and correct copies of the following:

1. Plaintiffs' Motion and Memorandum for Partial Summary Judgment;

2. Declaration of Jason Tucker;

3. Plaintiff Statement of Facts; and

4. this Certificate of Service

to be served on Defendants' counsel of record:

John Flynn jflynn@dioguardiflynn.com,

Peter Moolenaar pmoolenaar@dioguardiflyy.com,

Valentin Gurvits vgurvits@bostonlawgroup.com

Matthew Shayefar matt@bostonlawgroup.com

by filing a copy of the same with the Clerk of the Court using the court's CM-ECF system. By the terms of their agreement and the rules of the court, they will be served with a copy of the same via the CM-ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed at Tacoma, Washington,

DATED this 13th day of August 2014.

**FREEMAN LAW FIRM, INC.**

By:_s/ Spencer D. Freeman_____
Spencer Freeman
Attorney for Plaintiffs