Chad L. Belville, AZ Bar 020771
Attorney for Plaintiff Cybernet Entertainment.
4742 N. 24th Street, Suite 315
Phoenix, AZ 85016
Telephone: (602) 904-5485
Facsimile:  (602) 291-6953
Email: cbelville@azbar.org

Spencer D. Freeman, WSBA#25069
Attorney for Plaintiff Cybernet Entertainment.
1107 ½ Tacoma Avenue South
Tacoma, WA 98402
Telephone: (253) 383-4500
Facsimile:  (253) 383-4501
Email: sfreeman@freemanlawfirm.org
(Pro Hac Vice)

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA
PHOENIX DIVISION

CYBERNET ENTERTAINMENT, LLC, a New York Company,

      Plaintiff,

vs.

IG MEDIA INC., et al.,

      Defendants.

**Case No.:  2:12-cv-01101 SPL**

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

      Pursuant Fed.R.Civ.P. 56, and LRCiv 56.1, Plaintiff Cybernet Entertainment LLC ("Cybernet") files this Memorandum In Opposition To Defendants' Motion for Summary Judgment.

## I.     INTRODUCTION

Defendants displayed numerous Cybernet copyrighted videos and trademarks over hundreds of URLs on the Internet, in violation of Cybernet's copyrights.  As a result, Cybernet filed the instant lawsuit, alleging (1) Copyright Infringement; (2) Contributory Copyright Infringement; (3) Vicarious Copyright Infringement; (4) Inducement of Copyright Infringement; and (5) Trademark Infringement.  During this litigation, Cybernet's videos were once again displayed in the exact same URLs, a significant amount admittedly reposted by Defendants themselves.  Defendants herein seek summary judgment to dismiss all counts listed in Cybernet's complaint.

Defendants' sole argument for summary judgment is protection pursuant to DMCA safe harbor provisions.  The foundation supporting Defendants' argument is their assertion that Requests for Admissions served in Discovery specific to DMCA safe harbor provisions were not timely answered and, therefore deemed admitted.

Defendants' position fails as Responses to Requests for Admission were timely answered. Additionally, even if deemed untimely, Ninth Circuit precedent provides that the Requests are not deemed admitted in this instance.

Moreover, DMCA safe harbor protections are an affirmative defense.  For those videos admittedly reposted by Defendants, there is no possibility of such protections.  For all other videos, there, is at a minimum, a genuine material issue of fact as to whether the safe harbor protections are available.

## II.     FACTS

Defendant Igor Gens owns and operates two companies, International Media Ltd. and IG Media Inc.  Mr. Gens and his companies own and operate the Internet websites YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, JizzBo.com, HotFunHouse.com, and MoviesGuy.com, each displaying free lengthy adult videos.

In addition to displaying videos, Defendants' web sites allow third parties to take videos

- 2

located on Defendants' sites to display to other third parties on other third party websites for the purpose of driving traffic back to Defendants.  Defendants have enabled this feature by providing an "embed code" for every video on its site.  An internet user can copy and paste the embed code on another website where the video can then be viewed.  *CSOF* 33.

Concerned about infringement of its copyrights and trademarks, Cybernet retained the services of an infringement investigation service to search out Internet infringements.  In March 2012, a search of Defendant's website revealed 840 separate instances of infringement of Cybernet's intellectual property.  *CSOF* 34.  The original complaint in the instant matter, filed in May 2012, asserted 420 of these separately documented instances of violating Cybernet's registered copyrights and trademarks.

Shortly after the instant lawsuit was filed, it appeared that the Defendants removed the infringing videos from their websites.  However, in the fall of 2012, these videos were once again displayed on Defendants' websites.  Accordingly, in December 2012, Cybernet sent Defendants' DMCA Registered Agent 840 DMCA compliant take-down notices – one for each of the infringing videos discovered on each of Defendants' websites.  *CSOF* 35.

Subsequent to the service of the DMCA take-down notices in December 2012, it was believed, and represented by Defendants, that Defendants had once again removed Cybernet's copyrighted videos and trademarks from the infringing web sites.   Cybernet's January 2013 review of Defendants' web sites indicated that these infringements were taken down.  *CSOF* 36.

However, in July 2013, it was discovered once again that Cybernet's copyrighted works were displayed on the Defendants cites without authority – on the exact same URLs as when previously displayed.  115 of Cybernet's videos  - videos listed in the original complaint ***and*** subject to the December 2012 take-down notices - were discovered once again on Defendant's web sites.  Each of these videos were and are located in the exact same URL as they were when originally discovered, as listed in the complaint, and listed in the take-down notices.  *CSOF* 37.

Defendants have admitted to posting the 115 videos, albeit accidentally.  At least 60 of

these videos are subject to Cybernet's registered copyrights.   In addition, each of these videos were posted on the Defendants' web sites with embedded code, which enable the viewer to display that same video on countless websites over the Internet.  It cannot be actually known the number of places each video was posted, or the number of public viewers for those postings. *CSOF* 38.

Through subpoena, Plaintiff received Reflected Networks web server upload records for the Defendants' websites, showing each and every upload to the sites from January 2009 through October 2013.   This information included the IP address from which videos on the Defendants' sites were uploaded.  *CSOF* 39.

On April 1, 2014, Plaintiff sent Defendants discovery requests, including upload records for each video that Cybernet alleged as displayed on Defendants' sites in violation of Cybernet's copyrights.  Defendants counsel requested an extension of several weeks for the production of the discovery responses.  *CSOF 40*.  On May 14, 2014, Plaintiff's counsel received Defendants' discovery responses, which included upload information for each of Cybernet's uploaded videos on Defendants' web sites.  *CSOF* 41.

However, a significant amount of information was not provided, as requested, including:

- Defendants failed to produce copies of the 4,302 take down notices they represented as receiving for infringing activity on their sites.
- Defendants failed to produce copies of termination notices and identification of terminated infringers for the 1,158 infringers they represented as terminated pursuant to their repeat infringer policy.
- Defendants failed to produce copies of any communications with any independent contractors.
- Defendants failed to produce copies of any communications with any advertisers.
- Defendants failed to produce copies of any written agreements, invoices, or

- 4 -

payments to independent contractors, advertisers, or programmers.

- Defendants failed to produce any financial documents requested.
- Defendants failed to produce any communications with web site programmers.

*CSOF* 42.

Defendants did provide what was purported to be upload records for each of Cybernet's videos displayed on Defendants sites. The purported records included IP addresses from which each video was uploaded. *CSOF* 43. The records of the uploads of Cybernet's videos produced by Defendants were compared to the upload records from Reflected Networks, which hosted Defendant's web sites. Not one of the records produced by Defendants matched the upload records produced by Reflected Networks. *CSOF* 44.

On April 29, 2014, Plaintiff's counsel received Defendants' discovery requests, including Defendants IG Media, Inc. and International Media, Ltd.'s Requests for Admissions. *CSOF* 45. On May 29, 2014, Plaintiff's counsel reached out to Defendants' counsel and requested an extension of discovery requests similar of that previously granted to Defendant. Defendant's counsel failed to respond to this request. In addition, Plaintiff's counsel requested a conference regarding Defendants' responses to discovery requests and production. Defendant's counsel failed to respond to Plaintiff counsel's request for a discovery conference. *CSOF* 46.

Plaintiffs counsel needed a discovery conference regarding Defendants failure to produce the above referenced documents in order to assist responding to Defendants' discovery requests, including the Requests for Admissions. The Requests for Admissions centered on the application of the DMCA safe harbor provisions to Defendants web sites. Important to the application of such provisions is (1) how the videos ended up displayed on the site; (2) whether defendant incurred direct financial benefit from the infringing videos; and (3) whether Defendants had implemented a reasonable repeat infringer termination policy. The requested information and documents, which Defendants had failed to produce, was directly relevant to

those material issues. *CSOF* 47.

On June 12, 2013, Defendants counsel emailed Plaintiff's counsel complaining about Plaintiff's discovery responses and requesting dates for depositions. Defendants counsel again fails to address Plaintiff's counsel's request for a discovery conference. *CSOF* 48. Two court days later, on June 16, 2014, Plaintiff's counsel responded to Defendant's counsel, and again requested a discovery conference. *CSOF* 49. On June 17, 2014, Defendant's counsel agreed to have a discovery conference on June 19, 2014. On June 18, 2014, Plaintiff's counsel sent Defendants' counsel an email specifically listing the information and documents that Defendants had failed to produce. *CSOF* 50.

On June 19, 2014, the parties conducted a discovery conference via telephone. Plaintiff's counsel informed Defendants' counsel that there was difficult in responding to the discovery requests because of Defendants' failure to produce information and documents, including the requests for admissions. Defendants' counsel stated that they would approach their client again, but believed that no further documents would be produced. Specific to the documents pertaining to take down notices and repeat infringer information, Defendants counsel stated that given the small number of Plaintiff's videos on the web sites compared to the overall number of videos posted, that such endeavor "was not worth it" and "was overly burdensome." *CSOF* 51.

Plaintiffs counsel stated that Plaintiffs' discovery would be produced by Friday, June 27, 2014 as well as possible given the lack of discovery and information produced by Defendants. 0 *CSOF* 52. On June 27, 2014, Plaintiff's counsel was still in a trial in another jurisdiction, while he had anticipated being done with the trial and back in the office. However, Plaintiff's counsel's staff sent to Defendant's counsel the discovery responses as in their current form. This included the Responses to Requests for Admission, which denied each Request of Admission which provided DMCA safe harbor protections. *CSOF* 53.

Two weeks later, Plaintiff delivered updated responses to the discovery requests. However, none of the Responses to Requests for Admission were altered or changed.

1    (Defendant counsel stated that several pages of the discovery were not transmitted correctly, but

2    none of these pages included the Requests for Admission.)  *CSOF* 54.

### III.    ARGUMENT

4           A motion to dismiss pursuant to Fed.R.Civ.P. 56(c) may only be granted if the pleadings,

5    depositions, answers to interrogatories, and admissions on file, together with the affidavits, if

6    any, show that there is no genuine issue as to any material fact and that the moving party is

7    entitled to a judgment as a matter of law.  *Fed. R. Civ. P. 56(c)*.  A party seeking summary

8    judgment always bears the initial responsibility of informing the court of the basis for his

9    motion, and identifying those portions of the pleadings, depositions, answers to interrogatories,

10   and admissions on file, together with the affidavits, if any, which it believes demonstrate the

11   absence of a genuine issue of material fact.  *Beard v. Banks*, 548 U.S. 521, 529, 126 S. Ct.

12   2572 (2006); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265

13   (1986).  Summary judgment will not lie if there exists ***any*** genuine dispute about a fact from

14   which a reasonable jury could return a verdict for the nonmoving party.  *Anderson v. Liberty

15   Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  In resolving a

16   motion for summary judgment, the Court must view any evidence submitted in the light most

17   favorable to the opposing party.  *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769 (2007);

18   *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970).

20          Plaintiffs must satisfy two requirements in order to establish direct copyright

21   infringement: (1) show ownership of the infringed material; and (2) demonstrate that the alleged

22   infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106.

23   17 U.S.C. § 501(a); *Perfect 10, Inc. v. Amazon.com, Inc.,* 508 F.3d 1146, 1149 (9th Cir. 2007);

24   *A&M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1014 (9th Cir. 2001); *Baxter v. MCA, Inc.,*

25   812 F.2d 421, 423 (9th Cir. 1987); *S.O.S., Inc. v. Payday, Inc.,* 886 F.2d 1081, 1085 n. 3 (9th Cir

26   1989).  Direct infringement does not require intent or any particular state of mind. *Religious*

1   *Tech. Ctr. V. Netcom On-Line Commc'n Servs.,* 907 F.Supp. 1361, 1367 (N.D. Cal. 1995).

2   Copyright Registration for work creates rebuttable presumption that plaintiff's copyright

3   in the work is valid.  17 U.S.C. § 410(c); *Entertainment Research Group, Inc. v. Genesis*

4   *Creative Group, Inc.,* 122 F.3d 1211, 1217 (9th Cir. 1007), *cert denied,* 523 U.S. 1021, 118 S.Ct.

5   1302, 140 L.Ed.2d 468 (1998).

6   A website, even one claiming to be a service provider, infringes upon a copyright holder's

7   exclusive right to display its works when the website stores copies of the infringing material and

8   communicates copies of the material to users.  *Perfect 10 v. Amazon,* 508 F.3d at 1160.

9   Defendants claim to be an Internet Service Provider (ISP) pursuant to the Digital

10  Millennium Copyright Act (DMCA) and afforded the safe harbor protections provided therein.

11  These safe harbor provisions shield a service provider from financial liability for infringing

12  activity on its network.  17 U.S.C. § 512(c).

13  To enjoy the § 512(c) safe harbor an ISP must show that it (1) does not have actual

14  knowledge that the material or an activity using the material on the system or network is

15  infringing, and (2) is not aware of facts or circumstances from which infringing activity is

16  apparent.  If a service provider does obtain either actual or apparent knowledge, it may still

17  invoke the § 512(c) safe harbor only if it acts expeditiously to remove or disable access to the

18  infringing material.  *Corbin v. Amazon.com, Inc.,* 351 F.Supp. 1090, 1099 (W.D. Wash 2004).

19  The notice of infringement from a copyright holder constitutes evidence of an ISP's

20  knowledge.  *Ellison v. Robertson*, 357 F.3d 1072, (9th Cir. 2004) (DMCA compliant notice sent

21  to service provider); *ALS Scan, Inc. v. RemarQ Cmtys., Inc.*, 239 F.3d 619, 620-21 (4th Cir 2001)

22  (pre-suit letter substantially complying with DMCA sent to service provider); *Hendrickson v.*

23  *Amazon.com, Inc.,* 298 F. Supp.2d 914, 915 (Cent. Dist. CA 2003) (plaintiff attempted to notify

24  service provider); *Hendrickson v. eBay, Inc.,* 165 F. Supp.2d 1082, 1084-85 (Cent. Dist. CA

25  2001) (non-DMCA-compliant cease and desist letters sent); *CoStar Group, Inc. v. Loopnet, Inc.*,

26  164 F. Supp.2d 688, 703 (Dist. MY 2001) (plaintiff sent DMCA notification of claimed

1    infringement).

2         The DMCA "safe harbors provide protection from liability for: (1) transitory digital

3    network communications; (2) system caching; (3) information residing on systems or networks at

4    the direction of users; and (4) information location tools." *Ellison*, 357 F.3d at 1076-1077 (citing

5    17 U.S.C. §§ 512(a)-(d) ).

6         The § 512(c) safe harbor protects a service provider from liability for "infringement of

7    copyright by reason of the storage at the direction of a user of material that resides on a system

8    or network controlled or operated by or for the service provider." To qualify for the § 512(c) safe

9    harbor, a service provider must show that:  (1) it has neither actual knowledge that its system

10   contains infringing materials nor an awareness of facts or circumstances from which

11   infringement is apparent, or it has expeditiously removed or disabled access to infringing

12   material upon obtaining actual knowledge of infringement; (2) it receives no financial benefit

13   directly attributable to infringing activity; and (3) it responded expeditiously to remove or

14   disable access to material claimed to be infringing after receiving from the copyright holder a

15   notification conforming with requirements of § 512(c)(3).  *ALS Scan, Inc. v. RemarQ*

16   *Communities, Inc.*, 239 F.3d 619, 623 (4th Cir. 2001) (citing 17 U.S.C. § 512(c)(1)).

17        DMCA immunity is not presumptive. Rather, it is granted only to "innocent" service

18   providers who can prove that they do not have actual or constructive knowledge of the

19   infringement.  *ALS,* 239 F.3d at 625.

20        Excluded from § 512(c) protection is material that resides on the system or network

21   operated by or for the service provider through its own acts or decisions and not at the direction

22   of a user.  *Io Group v. Veoh Networks, Inc.,* 586 F.Supp.2d 1132, 1146 (No. Dist. CA 2008).

23        In this particular instance, Defendants claim that they should be granted summary

24   judgment on their affirmative defense of DMCA safe harbor provisions because their Requests

25   For Admissions sought admission with regard to the protections and were untimely served.

26   Plaintiff believes that the responses were timely *and* that even if viewed as untimely, they should

not be deemed admitted.

**A.      Plaintiffs' Responses to Requests for Admissions Were Timely.**

Plaintiff received Defendants' Requests for Admission on April 29, 2014.  On May 29, 2014, Plaintiff requested an extension for responding to discovery *and* requested a discovery conference.  The request for a discovery conference was completely ignored.  The discovery conference was important for Plaintiff to accurately respond to discovery, including and especially the Requests for Admission.

Several weeks later, Defendants counsel contacted Plaintiffs counsel chastising for late discovery responses and continuing to ignore the previous request for a discovery conference.  Plaintiff's counsel responded with another request for a discovery conference.  At this time, Defendants' counsel finally agreed to a discovery conference, which took place on June 19, 2014.

During the discovery conference, Plaintiffs' counsel relayed the difficulties in responding to discovery, including the Requests for Admission, because Defendants had failed to produce all requested documents.  Defendants' counsel indicated that the Defendants would not be producing any more documents.  Plaintiff's counsel relayed that the discovery responses would be delivered the following Friday, June 27, 2014, answered as best as possible as Defendants' refused to produce documents.

On June 27, 2014, the Responses to Requests for Admission were delivered to Defendants' counsel.

The Requests for Admission were specific to the application of the DMCA safe harbor provisions, including whether the Defendants had received direct financial benefit from infringing activity, whether Defendant had implemented a repeat infringement policy, and whether defendant had knowledge of infringing activity on their sites.  Plaintiff requested the production of documentation which was specific and relevant to the issues pertaining to DMCA safe harbor provisions.  Defendants had failed to produce these documents, and therefore it was

1   difficult for Plaintiff to response to the Requests for Admission.

2         Understandably, Plaintiff requested an extension *and* a discovery conference so these

3   issues could be discussed.  Defendant initially ignored the request for a discovery conference.

4   Nearly three weeks after the request, Defendant agreed to a discovery conference, at which time

5   Plaintiff explained the difficulty in responding to Defendants' discovery requests due to the

6   failure to produce documents.  Defendant relayed at that time that no further documentation

7   would be produced.

8         Thereafter, Plaintiff delivered the Requests for Admission on June 27, 2014, eight days

9   after the discovery conference and as promised in the discovery conference.

10        The Response to Requests for Admission should be deemed timely.  Plaintiff requested

11  an extension and a discovery conference to discuss failure of Defendant to produce discovery

12  which was affecting Plaintiff's ability to respond to Defendant's discovery.  Once the discovery

13  conference occurred, Plaintiff delivered the Requests for Admission as promised.

14        **B.      Even If Untimely, The Requests for Admissions Should Not Be Deemed
              Admitted.**

15

16        Should the Court determine that Plaintiff's Responses to Request for Admission were

17  untimely, the Court has full authority and discretion to permit late responses.  Fed.R.Civ.P. 36

18  (b) expressly authorizes the Court to permit withdrawal or amendment of an admission prior to

19  the entry of a final pretrial order "if it would promote the presentation of the merits of the action

20  and if the court is not persuaded that it would prejudice the requesting party in maintaining or

21  defending the action on the merits."  *French v. U.S.*, 416 F.2d 1149 (9th Cir. 1968).

22        The Ninth Circuit has adopted a two part standard for applying this rule. "The rule

23  permits the district court to exercise its discretion to grant relief from an admission made under

24  Rule 36(a) only when (1) 'the presentation of the merits of the action will be subserved,' and (2)

25  the party who obtained the admission fails to satisfy the court that withdrawal or amendment will

26  prejudice that party in maintaining the action or defense on the merits."  *Conlon v. United States*,

474 F.3d 616, 621 (9th Cir. 2007) (citations omitted).

"The first half of the test in Rule 36(b) is satisfied when upholding the admissions would practically eliminate any presentation of the merits of the case." *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995). In *Conlon*, the plaintiff failed to respond to requests for admissions, thereby admitting his damages were not caused by wrongful acts of the defendant. Thus, "the deemed admissions eliminated any need for a presentation on the merits" and therefore satisfied the first prong of the Rule 36(b) test. *Conlon*, 474 F.3d at 622.

Under the second half of the Rule 36(b) test, "[t]he party relying on the deemed admission has the burden of proving prejudice." *Conlon*, 474 F.3d at 622. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth. Rather, it relates to the difficulty a party may face in proving its case, e.g., caused by the unavailability of *key* witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted." *Hadley*, 45 F.3d at 1348 (citations omitted).

With regard to the instant matter, Fed.R.Civ.P. 36(b) permits grants the Court discretion to permit Plaintiff's Responses to Requests for Admission, if deemed untimely, withdrawing the admissions claimed by Defendants. Both parts of the test weight in favor of doing just that. Defendants' own motion establishes that the deemed admissions would eliminated the need for presentation of the case on the merits. Thus, the first part of the test is satisfied.

Regarding the second part of the test, Defendants have not and cannot prove any prejudice them in maintaining their defense on the merits. While Defendant may have to actually affirmatively prove the application of DMCA safe harbor provisions at trial, that is not enough to establish prejudice. If Defendants are truly an ISP innocent of copyright infringement and can truly meet all the requisites for DMCA safe harbor provisions, the slight tardiness in the Responses to Request for Admission can not have prejudiced their ability to establish their defense.

1

2

**C.      A Genuine Material Issue of Fact Exists Regarding Whether DMCA Safe Harbor Provisions Apply.**

3
      Defendants cannot claim safe harbor protections for videos that they displayed

4
themselves, when they had actual knowledge of the infringing videos, when there is not a

5
*reasonable* repeat infringer policy, when there is not actual implementation of the repeat

6
infringer policy, or when Defendants benefitted directly from the posting of the infringing

7
videos

8
      Interestingly, in Defendants' submissions to the Court in support of their Motion for

9
Summary Judgment, Defendants never assert that Cybernet's videos were posted on Defendants'

10
sites by third party users.   In fact, the facts collected by Cybernet in discovery contradict such

11
an assertion.  Defendant's web server host, Reflected Networks, produced documentation of

12
each and every third party user upload to Defendants' sites.  Defendant produced specific

13
information about the uploads of each of Cybernet's videos.  The information produced included

14
dates, times, and IP addresses for each upload.  Not one of the uploads of the Cybernet videos

15
are present in the Reflected Network upload records.  There is a material fact as to whether a

16
third party even uploaded the copyrighted material – or the materials were uploaded by

17
Defendants.

18
      Since the Reflected Network records establish all third party activities on the Defendants

19
web sites, the only conclusion is that the Cybernet videos were not, in fact, uploaded by third

20
party end users of the web site.

21
      Defendants also had actual knowledge of the Cybernet videos.  On several occasions

22
throughout the litigation, Cybernet's videos have been re-posted on the Defendants' sites in the

23
exact location as cited in the specific DMCA take down notices.  These posting occurred *after*

24
DMCA complaint take down notices were served on Defendants.  The DMCA compliant take

25
down notices are evidence of actual knowledge.

26
      It is also clear that the Defendants were responsible for the reposting of videos during this

1    litigation.  Defendants' own upload records fail to show corresponding uploads, which means

2    the videos were not re-uploaded to the same location by the third party user.  Instead,

3    Defendants caused them to be displayed on the sites.

4         Defendants purport to have a reasonable repeat infringer policy.  The policy states that

5    repeat infringers will be terminated after *nine* notices of infringement.  Quite simply, waiting

6    until a third party user has received *nine* notices of infringement is not reasonable.  It becomes

7    clear that an infringer can no longer be trusted to post on a web site at some point well before

8    nine notices are received.  At a minimum, there is a material issue of fact as to whether

9    Defendants' repeat infringement policy is reasonable.

10         Whether Defendants have actually implemented their repeat infringement policy is

11    another issue of contention.  Defendants state that they have a repeat infringer policy that

12    terminates a user after they have received notice that user has posted nine infringing videos.

13    However, the information that Defendants produced in discovery establishes that Defendants

14    have not actually implemented this policy.  Defendants state that a total of 1,158 users were

15    terminated as repeat infringers under the policy.  However, Defendants also state that they

16    received 4,302 take down notices.  Simple math tells us that if 1,158 users were terminated

17    under the states termination policy, 10,422 take down notices would have been received (9 times

18    1,158).  Since only 4,302 take down notices were received, Defendants must have been

19    implementing some other policy.

20         Another valid interpretation is that the Defendants are simply making up numbers.

21    Defendants refusal to produce the take down notices and produce information specific to the

22    terminated users support a conclusion that the Defendant have simply made up numbers. This is

23    especially true when their excuse for not producing is blatantly fabricated.  They claim that the

24    effort to collect the requested information is "overly burdensome," and even more so when

25    compared to the small percentage of content the Cybernet videos supposedly were on the

26    Defendants sites.

1    In practical reality, the effort should have been quite minimal.  The DMCA requires an

2    ISP to have a registered DMCA Agent to received take down notices.  Regarding producing take

3    down notices, the effort should have been little more than contacting their DMCA agent and

4    obtaining copies.   Regarding information pertaining to the terminated infringers, this

5    information would have been readily available.  In order to implement their policy of

6    terminating a user after *nine* infringement notices, Defendants would have had to have kept track

7    of each notice and of all information of each user relevant to each notice.  That is the only way

8    to determine when a user needs to be terminated under the termination policy.  Thus, there

9    would be a database of such information.  The production of this database would be no effort at

10   all.

11   Defendants have merely provided the Court with a conclusory statement of Mr. Gens that

12   he and his companies implanted a termination policy.  He then refuses to provide documentation

13   for this conclusion to be examined.  He cannot hide such information and facts and expect to

14   benefit from his statements.  Their deception creates, at a minimum, a material issue of fact

15   regarding whether a repeat infringer policy was actually implemented.

16   A similar issue exists regarding whether Defendants have properly met their burden

17   regarding direct financial benefit.  Defendants assert that they received no financial benefit from

18   the infringing videos.  However, Defendants fail to produce *any* documentation, as requested in

19   discovery, regarding their finances.  Defendant cannot hide behind a conclusory statement, fail

20   to provide the documentation to support the statement and have met their burden.

21   Defendants have the burden to establish that they qualify for DMCA safe harbor

22   provisions.  Initially, Defendants have the burden to establish that the videos were posting by

23   third parties.  Defendants have failed to satisfy this burden.  Defendants then have the burden to

24   establish that meet all the requirements for DMCA safe harbor provisions.  Defendants have

25   failed to meet this burden.

26   Defendants' motion for summary judgment should be denied.

- 15

**D.     DMCA Safe Harbor Provisions Have No Effect On Trademark Claims.**

Defendants' motion seeks to have all of Plaintiff's claims dismissed on summary judgment.  One of Plaintiff's claims is for trademark infringement.  None of

**IV.     CONCLUSION**

.

Dated August 28, 2014.

                                      Respectfully submitted,


                                ___*/s/ Spencer D. Freeman*_____
                                Spencer D. Freeman
                                Freeman Law Firm, Inc.
                                Attorney for Plaintiff Cybernet Entertainment LLC

**<u>CERTIFICATE OF SERVICE</u>**

I, Spencer D. Freeman, do hereby certify that on the 28th day of August 2014, I caused true and correct copies of the following:

     1.     Plaintiffs' Opposition to Defendant's Motion for Summary Judgment;

     2.     Declaration of Yan Harewicz;

     3.     Declaration of Spencer Freeman

     4.     Plaintiff's Controverting Statement of Facts; and

     5.     this Certificate of Service

to be served on Defendants' counsel of record:

John Flynn jflynn@dioguardiflynn.com,

Peter Moolenaar pmoolenaar@dioguardiflyy.com,

Valentin Gurvits vgurvits@bostonlawgroup.com

Matthew Shayefar matt@bostonlawgroup.com

by filing a copy of the same with the Clerk of the Court using the court's CM-ECF system.  By the terms of their agreement and the rules of the court, they will be served with a copy of the same via the CM-ECF system.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed at Tacoma, Washington,

DATED this 28th day of August 2014.

**FREEMAN LAW FIRM, INC.**

By:_s/ Spencer D. Freeman_____
Spencer Freeman
Attorney for Plaintiffs

- 17 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26