IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Cybernet Entertainment, LLC,<br><br>   Plaintiff,<br>vs.<br><br>IG Media, Inc., et al.,<br><br>   Defendants. | No. CV-12-01101-PHX-SPL<br><br>**ORDER** |

Before the Court is Defendants' Motion for Summary Judgment (Docs. 114, 115), and Plaintiff's Motion for Partial Summary Judgment (Docs. 118, 119, 120). The motions are fully briefed, and both will be denied.[1]

**I.   Background**

Plaintiff Cybernet Entertainment, LLC ("Cybernet") is a producer, distributer, and licensor of adult entertainment motion pictures and other audio visual works, and describes itself as "the global leader in the production of legal, high quality, authentic adult fetish motion pictures." (Doc. 119 ¶¶ 1-5.)

On May 24, 2012, Plaintiff filed a complaint (Doc. 1) bringing copyright and trademark claims against Igor Gens, IG Media Incorporated, and International Media Limited ("International Media"), arising from the alleged unauthorized posting of adult videos on seven websites: YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com,

---

[1]   The requests for oral argument are denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich,* 141 F.3d 920, 926 (9th Cir. 1998).

Case 2:12-cv-01101-SPL   Document 135   Filed 03/12/15   Page 2 of 9

MoviesGuy.com, JizzBo.com, and HotFunHouse.com (collectively "defendant websites"). The complaint alleges 420 instances in March 2012 in which Plaintiff's copyrighted videos were displayed on defendant websites without authorization. (Doc. 1 ¶¶ 83-502.) Plaintiff alleges that the videos were posted on defendant websites with an embedded code that enabled internet users to copy and display the copyrighted videos on other websites. (Doc. 1 ¶ 55.) While users can access defendant websites for free, Plaintiff alleges various tactics were employed such that Defendants ultimately generated revenue from the unauthorized display of Plaintiff's copyrighted work. (Doc. 1 ¶ 65.)

Plaintiff brings four copyright infringement claims under theories of direct, contributory, vicarious, and inducement liability. It claims Defendants reproduced, distributed, and displayed its copyrighted work without its permission, and induced, caused, materially contributed to, and financially benefited from, the unauthorized reproduction, display, and distribution of the copyrighted work by others. (Doc. 1 ¶¶ 503-540.) Plaintiff brings one trademark claim for false designation of origin. It claims that its trademarks were displayed or manipulated in the videos posted on defendant websites, causing the likelihood of confusion, mistake or deception as to Defendants' affiliations, connection, or association with Plaintiff, or as to the origin, sponsorship or approval of their goods or commercial activities. (Doc. 1 ¶¶ 541-544.)

Defendants move for summary judgment on all claims in the complaint. (Doc. 114.) Defendants argue they are entitled to summary judgment because, "[a]s deemed admitted by Plaintiff's failure to timely answer International Media's requests for admission, Defendants are protected from monetary liability for these claims under the safe harbor provisions" and "injunctive relief would be moot since Defendants have removed the alleged infringing material." (Doc. 114 at 1-2.) In turn, Plaintiff moves for partial summary judgment as to its claim "that Defendants IG Media, Inc., International Media, Ltd, and Igor Gens, and their agents are liable for violating Plaintiff's copyrights for affirmatively and admittedly posting 115 separate and distinct copyrights works." (Doc. 118 at 2.)

## II. Legal Standard

A court must grant summary judgment if the pleadings and supporting documents, viewed in the light most favorable to the non-moving party, "show[] that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jesinger v. Nevada Fed. Credit Union*, 24 F.3d 1127, 1130 (9th Cir. 1994). The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of any genuine issue of material fact. *Celotex*, 477 U.S. at 323 (citations omitted). The moving party need not disprove matters on which the opponent has the burden of proof at trial. *Celotex*, 477 U.S. at 323. The burden then shifts to the party opposing summary judgment, who "may not rest upon the mere allegations or denials of [the party's] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995). Summary judgment is, therefore, proper if the nonmoving party fails to make a showing sufficient to establish the existence of an essential element of his case on which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 323.

## III. Discussion

### A. Defendant's Motion for Summary Judgment

Defendants argue they are entitled to summary judgment because Plaintiff has admitted that they are entitled to the Digital Millennium Copyright Act ("DMCA") safe harbors, and "[g]iven that Defendants have removed and quarantined the allegedly infringing material, any injunction would be moot and should not be considered by the Court." (Doc. 114 at 9.)

Having reviewed the record, the Court finds Plaintiff's June and July 2014 responses (*see* Docs. 114-8, 114-9) to Defendants' request for admissions were untimely, and Plaintiff does not dispute that it has yet to serve a complete signed response. Therefore, under Rule 36(a)(3) of the Federal Rules of Civil Procedure, those matters are deemed admitted. Nevertheless, the Court construes Plaintiff's response to the summary judgment motion as a request to withdraw its admissions under Rule 36(b), and grants that request. Rule 36(b) "permits the district court to exercise its discretion to grant relief from an admission made under Rule 36(a) only when (1) 'the presentation of the merits of the action will be subserved,' and (2) 'the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice that party in maintaining the action or defense on the merits.'" *Conlon v. United States*, 474 F.3d 616, 621 (9th Cir. 2007) (citing Fed. R. Civ. P. 36(b); *Hadley v. United States*, 45 F.3d 1345, 1348 (9th Cir. 1995)).

The Court finds the first prong of Rule 36(b) has been met, and Defendants' argument to the contrary is disconcerting. The very basis for Defendants' summary judgment motion is that Plaintiff's admissions establish they are immune from monetary liability, and Plaintiff's remaining remedies are moot. Thus, while Defendants argue "this matter *could* proceed on its merits despite Plaintiff's admissions," sustaining the admissions would eliminate genuine disputes at the core of this case and prejudice Plaintiff in maintaining its claims for purposes of Rule 36(b). (Doc. 132 at 4 (emphasis in original)).

The second prong of Rule 36(b) is also satisfied. "The party who obtained the admission has the burden of proving that withdrawal of the admission would prejudice the party's case." *Hadley*, 45 F.3d at 1348. Defendants have not met that burden. Defendants maintain that they have been effectually deprived of discovery, but do not cite any specific prejudice they would suffer from withdrawal of Plaintiff's admissions. Defendants have not shown that their ability to present a defense at trial will be so adversely affected that the Court should not permit the admissions to be withdrawn.

The Court does not dispute that Plaintiff's untimely responses, failure to produce witnesses for depositions, and dilatory prosecution is a detriment to the adjudication of this case. However, Defendants elected to wait until the end of the discovery period to propound their requests, and in the face of Plaintiff's non-compliance, did not seek the Court's assistance, move for an extension of the discovery deadline, or unilaterally notice depositions. Neither party has shown good cause for their respective delays in accomplishing discovery in this case.

Plaintiff admissions are therefore deemed withdrawn. Defendants have not shown they are entitled to summary judgment as a matter of law, and their motion will be denied.[2]

### B.    Plaintiff's Motion for Partial Summary Judgment

Plaintiff asserts that in December 2012, Defendants' DMCA Registered Agent was provided with compliant take-down notices for each instance in which a copyrighted video was discovered on defendant websites. (Doc. 119 ¶ 22.) While Plaintiff's January 2013 review of defendant websites indicated that the videos had been removed, in July 2013, it discovered some videos were again displayed on the defendant websites. (Doc. 119 ¶¶ 23-24.) Consequently, Plaintiff argues that "Defendants have illegally displayed and distributed unauthorized copies of Cybernet's copyrighted works. Specific to the videos posted by Defendant, discovered by Cybernet in July 2013, there is no material issue of fact. Defendants have violated Cybernet's copyrights." (Doc. 118 at 9.)

Plaintiff's motion falls far from Rule 56's threshold and offers little clarity, much less identifies, the material factual disputes in this case. Instead, it is an abstruse narrative of conclusory facts. Plaintiff's motion fails to show there is no genuine dispute as to even the rudimentary elements of its case.  For example, Plaintiff fails to show there is no genuine dispute as to the number of registered, copyrighted videos, or instances of video displays, which are at issue in its motion. While Plaintiff moves for summary judgment

---

[2] Defendants are also not entitled to judgment as a matter law on Plaintiff's trademark claim by virtue of merely raising the dispute in its final footnote. *See* Fed. R. Civ. P. 56(c)(1) and (e)(4).

as to Defendants' posting of "115 separate and distinct works" (Doc. 118 at 1-2), of which "[a]t least 60… are subject to Cybernet's registered copyrights" (Doc. 118 at 5), Defendants contend that Plaintiff has "only provided copyright registrations for and identified 14 specific videos" in its motion, and attaches a chart to that effect (Doc. 130 ¶ 36; Doc. 131 at 7-9).

Plaintiff fails to show there is no genuine dispute as to whether *Defendants*, i.e., Igor Gens, IG Media Incorporated, and International Media, infringed Plaintiff's copyrighted works. Plaintiff moves for partial summary judgment against all Defendants, but does not address how or whether Igor Gens and IG Media Incorporated are liable for copyright infringement.[3] While Plaintiff states that "Igor Gens owns and operates IG Media Incorporated and International Media" (Doc. 119 ¶ 16), and "Gens and his companies own and operate" defendant websites (Doc. 119 ¶ 17), the declaration of Jason Tucker to which Plaintiff cites as the basis for these facts provides only: "I have reviewed and made myself familiar with Defendants' web sites at issue in the case..." (Doc. 87 ¶ 9). This is not a properly supported contention under Rule 56(c)(1) sufficient to shift the burden to Defendants to show the existence of a genuine dispute on these facts. *See Anderson,* 477 U.S. at 247; *Celotex*, 477 U.S. at 323. Defendants nonetheless dispute these facts and assert only that Igor Gens is the president of International Media, and International Media "operates" the defendant websites. (Doc. 130 ¶¶ 16-17, 27.)

---

[3] In the complaint, Plaintiff alleges that: (1) "Defendant Igor Gens owns and operates IG Media Inc. and International Media, Ltd. as alter egos, with beneficial ownership of www.YouJizz.com, JizzHut.com, JizzOnline.com, OnlyJizz.com, JizzBo.com, MoviesGuy.com, and HotFunHouse.com" (Doc. 1 ¶ 2); (2) "Defendant Igor Gens utilizes a shell corporation known as International Media Ltd.., which has a business address of 303 Shirley Street, PO Box N-492, Nassau, Bahamas and also utilizes IG Media Inc., with a business address of 2376 West 19th Avenue, Vancouver, British Columbia V6L 1C6 Canada. These two companies are alter egos of Gens, dominated by Gens, used to evade liability due to illegal copyright infringement. Evidence to pierce the corporate veil will be offered following discovery" (Doc. 1 ¶ 44); and that (3) "each Defendant, individually, corporately, jointly and/or severally, acted intentionally, knowingly, negligently or through willful blindness, as an agent, or representative of each and every, all and singular, the other Defendants, and acted to further the ends of the illegal and improper purposes alleged herein in a common course or scheme to infringe on the Plaintiff's copyrighted intellectual property for illegal profit and monetary gain" (Doc. 1 ¶ 51).

More significantly, Plaintiff fails to show there is no genuine dispute as to whether videos at issue in its motion were displayed with Plaintiff's consent. Defendants assert that pursuant to the authorization of Terrance Mundell, Plaintiff's affiliate manager, independent contractor Chad Brachat posted seventeen videos on International Media's websites. (Doc. 94 ¶¶ 5-8; Doc. 95 ¶¶ 37-44; Doc. 131 ¶ 22.) In its discovery responses, Plaintiff states that "an agent of Defendant was granted authority to display the limited short video clips… solely in promotion of Cybernet paid subscription websites and with a link to Cybernet's properties commiserate with Cybernet's Affiliate Program." (Doc. 114-9 at 4.) Thus, there remains a genuine dispute as to whether Defendants were authorized to post some of Plaintiff's copyrighted videos.

Plaintiff further fails to show there is no genuine dispute as to whether its videos were uploaded by users or by Defendants to defendant websites *in March 2012*. Plaintiff argues in its motion for partial summary judgment that "Defendants themselves posted and displayed the videos. They were not displayed at the hands of third party user, but at the hands of the Defendants." (Doc. 118 at 9.) Plaintiff asserts that "Defendants have admitted to posting the 115 videos" (Doc. 119 ¶ 25), pointing to the affidavit of Chad Bacherat (Doc. 94 ¶ 14). Yet the cited portion of the affidavit states that "sometime between December 2012 and July 15, 2013, [Chad Bacherat], unintentionally and against International Media's rules and procedures, re-enabled access to approximately 21 of the files that [he] had disabled in December of 2012. These 21 files correspond to the '115' videos Mr. Tucker references in his Declaration." (Doc. 94 ¶ 14.) Plaintiff does not point to any portion of the record that shows there is an absence of a genuine dispute that Defendants posted "115 separate and distinct" Cybernet-copyrighted works in March 2012, as alleged in the complaint. To the extent Plaintiff now alleges that Defendants are directly liable for copyright infringement by virtue of displaying videos on defendant websites in 2013, those allegations are not contained in the complaint, and are not properly before the Court on summary judgment. *See Pickern v. Pier 1 Imports Inc.*, 457 F.3d 963, 968-69 (9th Cir. 2006); *Coleman v. Quaker Oats Company*, 232 F.3d 1271,

1291-1292 (9th Cir. 2000) (precluding a party from adding a new theory of liability at the summary judgment stage).

While the issue of user-upload is intertwined with Defendants' safe harbor defense, an issue which Defendants will bear the burden at trial, it "does not affect the question of ultimate liability under the various doctrines of direct, vicarious, and contributory liability." *Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1109 (9th Cir. 2007) (internal citations and quotations omitted). Here, Plaintiff moves for summary judgment arguing Defendants "displayed and distributed unauthorized copies of Cybernet's copyrighted works." *See supra.* In the complaint, it brings both direct and secondary copyright liability claims, for which Plaintiff will bear the burden at trial to prove the source of the uploads. For example, Plaintiff will bear the burden to prove the specific instances in which it alleges Defendants are directly liable for reproduction of Plaintiff's videos through uploading, or through reposting the videos to its companion websites. *See also A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001) ("absent any specific information which identifies infringing activity, a computer system operator cannot be liable for contributory infringement merely because the structure of the system allows for the exchange of copyrighted material"). In order to prove Defendants are secondarily liable for user uploads, Plaintiff will have to prove the users uploaded copyrighted work. *See Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1169 (9th Cir. 2007) ("Secondary liability for copyright infringement does not exist in the absence of direct infringement by a third party") (citing *Napster*, 239 F.3d at 1013 n. 2).

Last, but not final, Plaintiff fails to show there is no genuine dispute as to whether Defendants qualify and are entitled to DMCA safe harbors under 17 U.S.C. §§ 512(c) and (i).[4] While Defendants do not dispute that Chad Bacherat re-enabled certain videos in

---

[4] To the extent Defendants may raise a safe harbor defense as to the 17 videos placed by Chad Brachat on the defendant websites pursuant to Cybernet's purported authorization (*see* Doc. 94 at 6; Doc. 95 at 25), that argument is foreclosed by the absence of any dispute as to whether these instances of infringement was "by reason of the storage at the direction of a user of material." 17 U.S.C. § 512(c)(1). *See UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1020 (9th Cir. 2013); *Costar Group Inc. v. Loopnet, Inc.*, 164 F. Supp. 2d 688, 701 (D. Md. 2001) ("The

2013, a genuine dispute remains as to whether they satisfy DMCA's conditions.

**IV. Conclusion**

The parties have squandered this opportunity on summary judgment to reach an efficient, early determination on any portion of this action by presenting the Court with pleadings that are wholly inadequate in both form and content. The Court cannot say that there is no genuine issue of material fact as to any claim or defense. The Court thus denies the parties' motions, and will issue a separate Order Setting Final Pretrial Conference.

The forthcoming order: (1) sets the deadlines for briefing motions in limine; (2) includes a form for the completion of the parties' joint proposed Final Pretrial Order; and (3) otherwise instructs the parties concerning their duties in preparing for the Final Pretrial Conference. A firm trial date will be set at the Final Pretrial Conference. The Final Pretrial Conference is not an invitation to the parties to relitigate discovery disputes. The parties are also reminded that period for discovery has concluded, and advises them that it will not be reopened simply because they are faced with the reality of trial. Accordingly,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (Docs. 114) and Plaintiff's Motion for Partial Summary Judgment (Doc. 118) are **denied**.

Dated this 12th day of March, 2015.

Honorable Steven P. Logan
United States District Judge

---

legislative history indicates that this does not include material 'that resides on the system or network operated by or for the service provider through its own acts or decisions and not at the direction of a user'") (quoting H.R. Rep. No. 105–551, at 53 (1998)). This does not extend to say however, that there is no genuine dispute as to whether Defendants were authorized to post these works.